In re John J. McSORLEY and Patricia A. McSorley, his wife, Debtors.

CAPITAL RESOURCES CORPORATION, Plaintiff,

v.

John J. McSORLEY and Patricia A. McSorley, his wife, Defendants.

Bankruptcy No. 81–04872.
Adv. No. 82–0042.

United States Bankruptcy Court, D. New Jersey.

Nov. 23, 1982.

Fischer & Kagan by Geoffrey S. Aaronson, Clifton, N.J., for Capital Resources Corp.

Weiner & Weiner by Andrew E. Weiner, Haddonfield, N.J., for debtors.

Robert M. Wood, Red Bank, N.J., Trustee.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

Plaintiff Capital Resources Corporation, as the assignee of a second mortgage given by the debtors, John and Patricia McSorley, has filed a complaint for relief from the automatic stay of § 362 of the Bankruptcy Code in order to enforce its mortgage lien. The relevant facts have been stipulated by the parties.

The debtors, John and Patricia McSorley, gave a mortgage dated June 20, 1975 to the Llewellyn Edison Savings and Loan Association in the principal sum of $4,489.20. This obligation had a maturity date of August 1, 1980. The mortgage was then assigned to plaintiff Capital Resources. This was a second mortgage on the debtor's property, and was given in exchange for a home improvement loan. The interest rate on this loan is not clear in the record. The debtors defaulted on their payments of this loan. As a result, Capital Resources obtained a judgment against the debtors on February 25, 1980 in the Camden County District Court in the sum of $1,492.03, which was docketed in the Superior Court on May 2, 1980. No execution on this judgment was ever made.

On August 17, 1981 the debtors filed a Petition under Chapter 13 of the Bankruptcy Code. The debtors filed a Chapter 13 plan which was confirmed over the objections of Capital Resources. Its objections at the confirmation hearing were basically the same as those contained in the present complaint seeking relief from the automatic stay. Under the confirmed plan, Capital Resources will receive 100% of the money due to it plus an additional 10% interest; unsecured creditors will also receive 100% of the money owed to them.

The outstanding first mortgage on the debtors' property has been reduced to approximately $13,000.00, and there is a third mortgage of approximately $7,000.00. Neither the first nor third mortgage is at issue here. The parties agree that the value of the mortgaged property is about $36,000.00, leaving an equity in the property of almost

$15,000.00. The debtors have made all required payments under their plan, as well as keeping current all payments due on the first and third mortgages.

Capital Resources argues that the debtors' plan should not have been confirmed because it was contrary to the requirements of Section 1322(b)(5) of the Bankruptcy Code. Section 1322(b) provides in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

.     .     .     .     .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

. . . .

(10) include any other appropriate provision not inconsistent with this title.

Capital Resources claims that under the terms of this statute debtors cannot extend the payment period of their residential mortgage obligations beyond the contractual time period, because that would "modify" the rights of mortgagees under section 1322(b)(2). Under section 1322(b)(5), it also argues that a plan cannot be properly confirmed unless the maturity date of the original mortgage obligation extends beyond the final date of payment under the debtors' plan regardless of any other factors.

The debtors argue that this complaint was brought for the sole purpose of harassment since all the arguments raised were also raised at the hearing on the confirmation of the plan, and were denied. The debtors also claim that the lien held by Capital Resources is not *solely* secured by residential real estate, and thus is not within the terms of section 1322(b)(2), because Capital Resources has also reduced its claim to a judgment lien. However, Capital Resources has not executed on this judgment, and the court recognizes that the only security given for the home improvement loan was the second mortgage on the debtors' home.

Unfortunately, the legislative history pertaining to this statute is sparse and, generally, just repeats the wording of the statute. See House Report No. 95–595, 95th Cong., 1st Sess. 429 (1977). Capital Resources cites several cases in support of its position. However, it does not discuss the analysis by Judge Ralph Kelley in the case *In re Simpkins,* 16 B.R. 956 (Bkrtcy.E.D. Tenn.1982), which this court feels is the most thorough analysis of the issue presented here.

In *In Re Simpkins,* Supra, a bank objected to the confirmation of the debtors' Chapter 13 plan on many grounds, including the fact that the plan proposed for the curing of defaults and maintaining regular payments on a secured note on which the last payment was due before the last payment due under the plan. The creditor alleged that this violated sections 1322(b)(2) and (5). Judge Kelley disagreed with the creditor's argument and gave the following helpful example:

Consider a simple case. The debtors own a home on which they have been paying for 29 years of a 30-year mortgage loan. They have substantial equity in their home. They are compelled to pay large medical bills for a family member, and it causes them to miss one or two payments on the mortgage. For some reason the lender threatens to foreclose despite the debtors' obvious ability to pay if they are given time. The debtors file a chapter 13 case. Their plan will take three years. They have not missed any other mortgage payments. Are they prohibited from curing the two-payment de-

fault and from making their regular payments because the last mortgage payment comes due during the plan? Of course not.

■ Judge Kelley cited extensively from the 1973 Report of the Commission on Bankruptcy Laws of the United States, H.Doc. No. 93–137, 93d Cong., 1st Sess. (1973), in support of his position allowing the debtor to cure defaults on a note for which the final payment was due before the final payment on the plan. He also reasoned that the curing of defaults and maintaining regular payments on a claim secured only by the debtor's residence does not violate section 1322(b)(2), because the claimant's rights are not "modified." There is no modification of a creditor's claim if he is receiving 100% of what he is due plus accruing interest up until the time of payment. I agree with Judge Kelley that the protection of section 1322(b)(2) was intended to prevent the application of the "cramdown" provision of the Bankruptcy Code to the holder of a claim secured solely by residential real estate. 16 B.R. at 963. It was not intended to be applied to situations like the present plan so as to work an injustice on the debtors' attempt to keep their home. The Second Circuit has recently agreed with this interpretation and stated: '... we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be *modifications* of claims.' *In Re Taddeo*, 685 F.2d 24, 9 B.C.D. 556, 559 (2 Cir.1982). In that case the court held that debtors could cure defaults and de-accelerate their secured long-term residential debt which had been accelerated under the terms of their agreement, prior to the filing of the Chapter 13 Petition.

■ The cited cases also support the position that Capital Resources is not entitled to relief from the automatic stay because of the application of section 1322(b)(5). Even though the entire mortgage had been accelerated in *In Re Taddeo*, supra, and thus was

due before the debtors' filed their Chapter 13 Petition, the Second Circuit held that the statute did not bar the curing of the default and reinstatement of regular payments, as if a default had not occurred.

Similarly, Judge Kelley in *In Re Simpkins*, supra, held that the statute was no bar to curing defaults under a plan in which the last payment on the note was due before the completion of the plan. He reasoned as follows:

Thus, the plan can provide for curing defaults and maintaining regular payments without modifying the claimant's rights in violation of § 1322(b)(2). The authority given by § 1322(b)(5) amounts to specific authority for dealing with claims secured only by the debtor's residence and on which the last payment is due after completion of the plan. Specific authority is not needed for such claims on which the last payment is due during the plan. General authority is found in subsection (b)(10), which allows the plan to include any provision not inconsistent with the Bankruptcy Code.

Applying this analysis to the present case, section 1322(b)(5) does not govern, because the last payment due under the note was due before the completion of the debtors' plan. The final payment under the note at issue was due even before the debtors filed their Chapter 13 Petition.

■ In addition, section 1322(b)(5) concerns the maintenance of payments while the case is pending as well as the curing of any default on a claim. Here, there are no current payments to maintain because the term of the note expired before the Chapter 13 Petition was filed. Thus, the terms of this statute do not apply in the present situation. This court agrees with Judge Kelley that other specific authority to cure the default here is not necessary, because general authority is given in sections 1322(b)(3) and (10). Those sections allow the curing of defaults and allow the plan to include any provision not inconsistent with the Bankruptcy Code. Sections 1322(b)(2) and (5) do not specifically prohibit the debtors from curing the default on the debt owed to Capital Resources. Therefore, the general authority is sufficient to allow it.

Allowing the debtors to cure the default on this loan is also equitable given the facts of this case. The value of the debt to Capital Resources is small in relation to the value of the property and the amount of the debtors' equity. Both the first and third mortgagees are significantly larger than the one at issue. The consequences in permitting the second mortgagee to demand payment in full or to vacate the stay flies in the face of the raison d'etre of the provisions of Chapter 13 of the Bankruptcy Code which were designed by Congress to enable a person to get a new start in life while at the same time affording secured creditors a measured security for payment of their obligations. It would be unfair to the debtors to have their plan defeated and to lose the large exemption in their residence by a tortured reading of section 1322.

The relief sought in the complaint is denied. Let an order be submitted in accordance with this opinion. No costs to either party.