In re Cathy Ann SPADER a/k/a Cathy Ann Blinde, Debtor.

Ralph BLINDE, Appellant,

v.

Cathy Ann SPADER, Appellee.

Bankruptcy No. 83-03283-W-13.

Adv. No. 85-0091-CV-W-1.

United States District Court, W.D. Missouri, W.D.

Oct. 31, 1986.

John J. Hager, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for appellant.

Lawrence D. Love, Independence, Mo., for appellee.

## MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

This case pends on claimant Ralph Blinde's appeal from final orders entered in the United States Bankruptcy Court for the Western District of Missouri on October 2, 1984 and December 12, 1984.

On October 2, 1984, after an evidentiary hearing, Bankruptcy Judge Dennis Stewart held that debtor Cathy Ann Spader owed claimant $750.00 in total interest on her promissory note dated March 24, 1981. Judge Stewart confirmed debtor's plan insofar as it dealt with Blinde's claim.

The claimant moved to alter or amend this order. In his December 12, 1984 order, Bankruptcy Judge Joel Pelofsky affirmed Judge Stewart's ruling on the amount of interest owing on the note. Judge Pelofsky further ordered that claimant was entitled to costs incurred in his attempt to foreclose on the property which secured the promissory note, as evidence by the amended proof of claim. Judge

Pelofsky overruled all of claimant's other objections to the October 2, 1984 order.

Claimant appeals these two orders, claiming that he is entitled to immediately receive $15,000.00 (the principal amount due and owing on the note), plus interest at a rate of 10% through March 24, 1982 (the date the note became due), with interest at a rate of 15% after March 24, 1982, plus costs of the foreclosure attempt.

The findings of the bankruptcy court may not be set aside by this Court unless found to be clearly erroneous. Bankr.Rule 8013; *Brookfield Production Credit Ass'n. v. Borron*, 36 B.R. 445 (E.D.Mo. 1983), *aff'd*, 738 F.2d 951 (8th Cir.1984). For the reasons discussed below, the orders of the bankruptcy court are affirmed in part and reversed in part.

## I.

The debt on which claimant bases his claim is evidenced by debtor's promissory note of March 24, 1981. The note was entered into as part of the parties' separation agreement following their dissolution of marriage. The note provided:

> For value received I, CATHY A. BLINDE, do hereby promise to pay unto, RALPH L. BLINDE, or his order or assigns the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00). Said sum of $15,000.00 shall be payable in the following manner:
>
> $5,000.00 shall be payable on June 24, 1981;
>
> $10,000.00 shall be payable on March 23, 1982.
>
> The said amounts referred to above shall be payable on the dates stated at the residence of RALPH L. BLINDE.
>
> The amount of $10,000.00 shall bear interest at the rate of TEN (10%) percent per annum for a period of NINE (9) months from June 24, 1981 until March

23, 1982. Said interest in the amount of SEVEN HUNDRED FIFTY DOLLARS ($750.00) shall be due and payable on March 23, 1982.

> This note shall be secured by a Deed of Trust on the real estate known as: 1122 Clubhouse Lane, Lee's Summit, Missouri and legally described as:
>
> > All of Lot 116, Oak Tree Farm, Third Plat, a subdivision in Lee's Summit, Jackson County, Missouri.

A second deed of trust on the described real estate was also entered into to secure the note. The described real estate is the debtor's principal residence.

The debtor did not make any payments on the note. In December, 1981, after some negotiations between their attorneys, debtor paid claimant $375.00 which represented one-half of the interest payment due as of March 23, 1982, as described in the note. Claimant contends that as part of these negotiations, their attorneys agreed that the debtor would pay 15% per annum interest on the outstanding principal. Claimant supports his contention by referring to a December 30, 1981 letter from debtor's attorney to claimant's attorney.[1]

Debtor made no payments on the note other than the $375 interest payment in December, 1981. By its terms, the entire amount owing on the note was due on March 23, 1982. Claimant instituted foreclosure proceedings. Foreclosure was scheduled for December 14, 1983 after due notice was published. On December 13, 1983, Debtor filed her bankruptcy petition under Title 11, Chapter 13 of the United States Code. The scheduled foreclosure sale was therefore called off in accordance with the automatic stay entered on December 13, 1983 by Judge Stewart.

Claimant objects to debtor's amended Chapter 13 plan. Claimant argues that the

---

**1.** That letter stated: "This letter will verify our telephone conference of December 31, 1981, at which time I indicated to you that as per your request, my client delivered to your client a check for $375.00 which should get the interest current as of December 24, 1981. You have now requested that my client pay directly to your client interest only at 15% per annum until she can get the house disposed of or something else worked out on this case. If your client has any problems with any of this, please call me, otherwise we will proceed on this basis.... Looks to me like the monthly payments at 15% on $15,000 will be $187.50 per month."

stay should be lifted as to the outstanding debt on the promissory note. Apparently claimant bases his argument on the facts that (1) the debt is secured by the debtor's principal residence and (2) the entire amount was due and owing before the Chapter 13 petition was filed. *See* 11 U.S.C. §§ 1322(b)(2, 3, 5). Claimant further argues that he is entitled to 15% interest on the amount due on the note because the negotiations which resulted in the December 30, 1981 letter from debtor's attorney show debtor's agreement to a rate of interest greater than that described in the promissory note.

In the alternative, claimant argues that he is entitled to the statutory rate of interest on the outstanding debt. *See* Mo.Rev. Stat. § 408.120. For the reasons which follow, this Court finds and concludes (1) that the bankruptcy court did not err when it confirmed debtor's plan insofar as it provided for a repayment schedule on the secured promissory note held by Blinde; (2) that the bankruptcy court incorrectly held that the entire amount of interest due to claimant was $750.00; and (3) that the bankruptcy court correctly held that claimant was entitled to his costs of foreclosure as evidenced by the amended proof of claim.

## II.

The claimant is not entitled to have the automatic stay lifted. The purpose of Chapter 13 of the Bankruptcy Act of 1978, as amended, 11 U.S.C. §§ 1301–1330, is to rehabilitate individual debtors while protecting the interests of creditors. *In re Taddeo*, 9 B.R. 299 (Bkrtcy E.D.N.Y.1981), *aff'd*, 685 F.2d 24 (2d Cir.1982); *In re Estus*, 695 F.2d 311 (8th Cir.1982). To that end, the bankruptcy court is given power to approve debtors' plans in accordance with 11 U.S.C. §§ 1322 and 1325. Section 1322(b)(3) permits the bankruptcy court to confirm a debtor's plan which "provide[s] for the curing or waiving of any default." *See also* 11 U.S.C. § 1322(b)(10) (plan may "include any other appropriate provision not inconsistent with this title").

In the instant case, the promissory note which is the basis of claimant's objection was in default prior to the filing of the Chapter 13 petition. The plan provides for a curing of that default in full through monthly payments over a five-year period, as allowed in 11 U.S.C. § 1322(b)(3).

Claimant argues that curing this default is an improper modification of his secured claim, as prohibited by 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

.    .    .    .    .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

The debt here is secured only by the debtor's principal residence. That fact is not in dispute. However, not all provisions in Chapter 13 plans which deal with claims secured by the debtor's principal residence are impermissible "modifications" of creditors' rights. This Court finds that curing default of this short-term mortgage loan which is secured only by debtor's principal residence is not an impermissible modification within the meaning of 11 U.S.C. § 1322(b)(2).

## A.

Whether a debtor may use a Chapter 13 plan to cure default of a short term mortgage loan which by its terms becomes due before a Chapter 13 petition is filed, and which is secured only by the debtor's principal residence is an issue which has not yet been addressed by the Eighth Circuit or this District.

Of those courts which have decided the precise question presented here, many have found that cure of such a default is allowable under the Bankruptcy Code. *See, e.g., In re Larkins*, 50 B.R. 984 (W.D.Ky 1985); *In re Minick*, 63 B.R. 440 (Bkrtcy D.D.C. 1986); *In re McSorley*, 24 B.R. 795 (Bkrtcy, D.N.J.1982). Others, led by the Ninth Circuit, have held that defaults on

short term mortgage loans which are secured by residential mortgages, and which become due by their own terms prior to the filing of the Chapter 13 petition are not curable under the plan. *See, e.g., In re Seidel,* 752 F.2d 1382 (9th Cir.1985); *In re Harlan,* 783 F.2d 839 (9th Cir.1986); *In re Palazzolo,* 55 B.R. 17 (Bkrtcy E.D.N.Y. 1985); *In re Miller,* 53 B.R. 100 (Bkrtcy S.D.Ohio 1985).

These differing interpretations of what Section 1322(b)(2) requires stem from differing interpretations of the central policy of that provision. As noted by Judge Kelly in *In re Simpkins,* 16 B.R. 956 (Bkrtcy E.D.Tenn.1982), Congress had two aims in passing Section 1322: first, to protect debtors' homes by curing defaults and making regular payments on their mortgages; second, to protect the lender secured only by a security interest in the debtor's home, especially those secured by long-term mortgages.[2] *Id.* at 963. It is these conflicting goals which have led to the conflicting decisions among the various courts which have considered the issue.

This Court believes that the rehabilitative purpose of Chapter 13 is the primary aim of the bankruptcy code. The rigid interpretation of Section 1322(b)(2) imposed by the Ninth Circuit in *Seidel* defeats that aim. Almost all courts which have considered the issue have allowed de-acceleration of the mortgage obligation, holding that it is not a modification of the creditor's rights prohibited by Section 1322(b)(2). *In re Taddeo,* 685 F.2d 24, 26–27 (2d Cir.1982); *In re Clark,* 738 F.2d 869, 872 (7th Cir. 1984); *In re Grubbs,* 730 F.2d 236 (5th Cir.1984) (en banc). *See also In re Minick, supra,* 63 B.R. at 442–43.

*Taddeo* held that "the power to 'cure any default' granted in §§ 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be *modifications* of claims." 685 F.2d at 26–27. The Fifth Circuit en banc examined the legislative history of Section 1322 in detail and concluded that:

> the final amendments to subsections (b)(2) and (b)(5) of § 1322, did not, with regard to home mortgages, affect the general provision of Chapter 13, *see* § 1322(a), that permitted a petitioner's plan to pay from future income over the term of the plan any matured pre-petition obligations whether secured or unsecured; nor did these amendments intend to affect the authorization for a Chapter 13 plan either (1) to cure any default with regard to debts that were provided for by the plan, § 1322(b)(2), or (2), to cure any default within a reasonable time and to maintain payments upon a non-dischargeable long term obligation, whether secured or unsecured, § 1322(b)(5).

*In re Grubbs,* 730 F.2d at 246.

The Fifth Circuit extended its application of the legislative history by holding that a Chapter 13 plan "could ... provide for the payment from future income of previously non-accelerated matured amounts that had become due prior to the filing of the Chapter 13 petition, §§ 1322(a), 1327, 1328(a)." *Id.* at 247. *Accord, In re Minick, supra,* 63 B.R. at 445. *See also In re Simpkins, supra,* 16 B.R. at 966–67 (cure of pre- and post-petition defaults are allowable under § 1322(b)(2) even on short-term non-accelerated mortgage notes).

With acceleration, default triggers the contractual consequence of making the entire debt immediately due and owing. *See In re Taddeo, supra,* 685 F.2d at 26–27. Where the court allows de-acceleration and reinstatement of the original obligation in those cases, no "modification" results. The same amount is due to the creditor both before and after the plan is in effect. *See In re Larkins, supra,* 50 B.R. at 986

---

2. Long term mortgages are specifically dealt with in 11 U.S.C. § 1322(b)(5). Section 1322(b)(5) provides: "notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

("'Modify' means to change the amount of the debt. Thus, there is no modification of the plan whereby debtors pay the arrearages over a 36 month period and begin installment payments on the mortgage outside the plan.").

■ Extending that reasoning to this case, cure is proper and is not a "modification" of claimant's rights where claimant received the present value of his claim. By allowing the debtor to cure her default here, the bankruptcy court acted in a manner consistent with the intent of Chapter 13. The debtor will be able to keep her home, and the secured creditor will receive the amount stated to be owing him in the promissory note.

The fact that the debt became due by its own terms prior to the initiation of the Chapter 13 plan rather than by acceleration does not change the analysis here, *Seidel* notwithstanding. *Seidel* distinguished those cases which allowed cure of accelerated mortgage obligations from the present situation where the secured debt has matured by the passage of time:

> When a debt has been accelerated, 'cure' therefore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured ... 'cure' as defined by these courts cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable.

752 F.2d at 1386.

The *Seidel* court's conclusion, however, creates a technical distinction between accelerated and naturally maturing secured obligations. The *Seidel* court's distinction is unduly formal, defeating "the flexibility that Congress intended so as to encourage debtors to utilize Chapter 13 and achieve its rehabilitative purposes." *In re Minick*, 63 B.R. at 445. *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977) *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079.

Further, *Seidel*'s conclusion is contrary to the conclusion of other courts which have decided the same issue. *In re Larkins*, 50 B.R. 984; *In re Grubbs, supra,* 730 F.2d at 247; *In re Minick, supra,* 63 B.R. at 445. We concur in the *Minick* court's conclusion "that *Grubbs, Taddeo, Clark* and *Larkins* are right and *Seidel* is wrong." 63 B.R. at 445.

Nor does the fact that the debt naturally matured change the bankruptcy court's power under Sections 1322 and 1325 to confirm a plan which provides for the curing of a default. The decisions of the two bankruptcy judges who have heard this case are therefore not in error and will be upheld.

On the facts of the case at hand, if we were to override the bankruptcy court's automatic stay and confirmation of the plan, it would "work an injustice on the debtor['s] attempt to keep [her] home." *See In re McSorley*, 24 B.R. at 798. *See also* H.R.Rep. No. 595 U.S.Code Cong. & Admin.News 1978, p. 5787, *supra,* ("The benefit of ... Chapter 13 ... is that it permits the debtor to protect his assets.").

## B.

■ Claimant argues that because his is not a long term debt, the bankruptcy court does not have the power to include it in the Chapter 13 plan, under the scheme devised by Congress in Sections 1322(b)(2) and (b)(5). Contrary to claimant's argument, however, the bankruptcy court's power to provide for cure of home mortgage defaults is not limited to the language of Section 1322(b)(5). *In re Grubbs, supra,* 730 F.2d at 247 (short term residential mortgage debt curable under § 1322(b)(3)); *In re Simpkins, supra,* 16 B.R. at 691. ("Acceleration may affect the right to cure a default but subsection (b)(5) should not be relied on to deny the right to cure.").

If claimant's argument were correct, the primary purpose of Chapter 13 would be defeated. Many courts have held, we believe correctly, that where the creditor receives what he would have received under his secured claim, curing default on short term residential mortgage debt has been held to not be an impermissible modifica-

tion of creditor's rights. *See, e.g., In re Grubbs, supra,* 730 F.2d at 247. Such cures have been allowed even though they do not fall with the specific language of Section 1322(b)(5)'s exception to Section 1322(b)(2)'s no modification rule.[3]

### C.

The bankruptcy court is given power to approve individual plans which remedy an individual debtor's unique financial situation. This power to fashion individual plans is, of course, limited by the guidelines of the Bankruptcy Act. The plan fashioned here falls within the parameters of the Bankruptcy Act insofar as it approved the right of the debtor to cure her default on the creditor's secured claim on her home. In this conclusion we disagree with the Ninth Circuit.

Although the Ninth Circuit holding against cure of prepetition defaults has been followed by a few bankruptcy courts, there is a significant body of case law which holds that such defaults are allowable. Given the split in the case law, and the fact that this circuit has not yet decided the question presented here, the bankruptcy judges who confirmed the plan were justified in so doing. Their actions approving the right of the debtor to cure default on the second mortgage on her home is not clearly in error and will therefore be upheld. This Court further believes that the bankruptcy court's actions are the proper way for it to proceed under the Bankruptcy Act.

### III.

The bankruptcy court's determination that interest on the note is limited to

$750.00 is reversed. The secured creditor is entitled to the present value of his claim. 11 U.S.C. § 506; § 1325(a)(5)(B)(ii); *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982). The maximum allowable rate of interest, however, is limited to the contract rate. *See In re Colegrove,* 771 F.2d 119, 123 (6th Cir.1985); *In re Minick, supra,* 63 B.R. at 446–47; *In re Nesmith,* 57 B.R. 348 (Bkrtcy E.D.Pa.1986).

Judge Pelofsky held that the claimant is an oversecured creditor. *See* 11 U.S.C. § 506(b); § 1325(a)(5)(B)(ii). There is no dispute as to that holding. However, Judge Pelofsky denied claimant's request for interest on the arrearage except to the extent of $750.00. We disagree.

The promissory note provides that "[t]he amount of $10,000.00 [which was payable on March 23, 1982] shall bear interest at the rate of TEN (10%) per annum for a period of NINE (9) months from June 24, 1981 until March 23, 1982. Said interest in the amount of SEVEN HUNDRED FIFTY DOLLARS ($750.00) shall be due and payable on March 23, 1982."

Although the contract specifies that the amount of interest due on the note is $750.00, that stated total was clearly based on the premise that the $10,000.00 which was to be paid on March 23, 1982 would, in fact, be paid by that date. The express rate of interest on the outstanding balance under the terms of the note is 10 percent.[4] Claimant is entitled to interest at the maximum rate of 10 percent. *In re Colegrove, supra.* However, claimant appropriately asks that this Court apply the statutory rate of interest of 9% to the arrearage. Mo.Rev.Stat. § 408.201.

---

**3.** Claimant's literal reading of Section 1322(b)(5) also ignores the many cases which have held that accelerated mortgage notes may be included in Chapter 13 plans. Here, as with an acceleration, the entire debt at issue is currently due and owing.

**4.** Claimant urges that the agreed upon rate of interest was 15%. However, Judge Stewart found that there was no effective oral agreement to pay the 15% interest as claimant contends. He based that finding on the debtor's uncontradicted testimony that her December,

1981 payment was intended only as half of the agreed-upon $750.00 interest payment; that she knew nothing of the alleged agreement to pay 15% interest; and that she did not authorize her attorney to make any such agreement on her behalf. Claimant on appeal fails to direct attention to any evidence to contradict those findings, and this Court does not find them to be in error. However, in light of our holding that claimant is entitled to interest at the lower of the contract or market rate, whether the agreed-upon rate is greater than 10% is not relevant.

*Colegrove* and other cases which have considered the issue have held that a secured creditor is entitled to the present value of his claim and that the rate of interest used to reach that present value is the lower of the market rate or contract rate. *In re Colegrove, supra,* 771 F.2d at 123; *In re Minick, supra,* 63 B.R. at 446–47; *In re Nesmith, supra,* 57 B.R. at 349. Claimant asks that the statutory rate of interest be applied to the arrearage. This Court finds and concludes that the lower 9% interest rate will adequately compensate claimant for the present value of his claim.

Accordingly, interest will be allowed on the arrearage at the rate of 9 percent per annum. This holding is based on the requirement under the Bankruptcy Act that claimant is entitled to the present value of his claim. *See* 11 U.S.C. § 506. The arrearage as of the date of filing was $15,375.00. Interest shall be calculated on the $15,375.00 arrearage from March 23, 1982 until December 12, 1983.

### IV.

■ Judge Pelofsky's determination that claimant is entitled to costs incurred in his attempt to foreclose the property was a proper application of 11 U.S.C. § 506(b) to the facts of this case. Accordingly, that portion of Judge Pelofsky's decision is affirmed.

Therefore, it is

ORDERED (1) that the bankruptcy court's confirmation of debtor's Chapter 13 plan should be and is hereby affirmed. It is further

ORDERED (2) that the bankruptcy court's holding that interest on the promissory note be limited to $750.00 should be and is hereby reversed. Interest shall be computed from March 23, 1982 until December 12, 1983 at a rate of nine (9) percent per annum on the outstanding balance due of $15,375.00. It is further

ORDERED (3) that the bankruptcy court's holding that foreclosure costs in the total amount of $427.46, as evidenced by the amended proof of claim, should be and is hereby affirmed.