### In re Steven and Bettye DAVIS, Debtors.

### Bankruptcy No. 88 B 8473.

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 28, 1988.

Bennett A. Kahn, Office of Melvin J. Kaplan, Chicago, Ill., for debtors.

Kropik, Papuga & Shaw, Chicago, Ill., for The First Nat. Bank of Chicago.

Craig. Phelps, Chicago, Ill., Chapter 13 trustee.

## MEMORANDUM OPINION ON MOTION OF FIRST NATIONAL BANK TO MODIFY STAY AND ON DEBTORS MOTIONS FOR SPECIAL MORTGAGE ORDER AND TO MODIFY PLAN

JACK B. SCHMETTERER, Bankruptcy Judge.

In this Chapter 13 case, the secured creditor First National Bank of Chicago has moved to modify the automatic stay under 11 U.S.C. § 362 or alternatively to dismiss the case. Debtors have moved for entry of a "Special Mortgage Order" and to amend their proposed Plan to incorporate their proposal to pay the secured debt. For reasons stated below, the stay will be modified in favor of the First National Bank, and Debtors' motions will be denied.

### FACTS AND PLEADINGS

The dispositive facts pleaded by the parties are undisputed.

The First National Bank of Chicago (hereafter "Bank") has a valid first mortgage lien against Debtors' residence in Chicago, Illinois. Debtors admit to being in default on that mortgage since December of 1986. The subject lien will mature by its own terms on November 10, 1988. Debtors state in their memorandum that "they be-

lieve" the Bank has taken judgment against them in a state court foreclosure action, but the Bank does not plead that. For reasons set forth below, there is no need to ascertain the accuracy of Debtors surmise; entry of such judgment would not change the outcome here.

Debtors propose a Plan to pay off the complete mortgage balance through monthly Plan payments. Originally they proposed to do so over 36 months. In different motions Debtors now seek to pay off that mortgage either over two years through monthly payments, or within six months through monthly payments and then a full pay-off through sale or refinancing of the home. Under each alternative proposed, the payments would be completed long after the last payment due under the mortgage by its terms.

Debtors argue in their brief that they owe the Bank less than $20,000 on a home worth $36,000, but no pleadings allege this and it has not been put in issue by the pleadings.

### DISCUSSION

1.  *Section 1322(b)(2) and (5) apply even if the Bank has obtained judgment.*

■ Chapter 13 debtors often file for protection in bankruptcy only after their homestead is foreclosed on and judgment is entered, but just prior to foreclosure sale. When that happens prior to such sale, Debtors may cure and deaccelerate the mortgage in bankruptcy under 11 U.S.C. § 1322(b)(5), *In re Clark,* 738 F.2d 869 (7th Cir.1984), both under the old Illinois Mortgage Act, *In re Schnupp,* 64 B.R. 763 (Bankr.N.D.Ill.1986); *In re Tukes,* Bankr. No. 86 B 5418 (Bankr.N.D.Ill.1988) (Ginsberg, J. unpublished) and also under the New Illinois Mortgage Act, *In re Josephs,* 85 B.R. 500 (Bankr.N.D.Ill.1988) (Wedoff, J.).

Under § 1322(b) of the Bankruptcy Code, the Chapter 13 Plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real proper-

ty that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

\*   \*   \*   \*   \*   \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Title 11 U.S.C. § 1322(b).

Under Illinois foreclosure law, Illinois is a "lien" state, not a "title" state that passes title upon entry of the judgment of foreclosure. The often loosely described "merger of mortgage into foreclosure judgment" does not pass title or substantially alter the secured creditor's rights. *See Clark, Schnupp, Tukes,* and *Josephs supra.* As this Court and Judge Ginsberg discussed in *Schnupp* and *Tukes* under the former Illinois foreclosure law, following entry of foreclosure judgment the creditor retains its mortgage lien until after foreclosure sale. Judge Wedoff likewise found in *Josephs* under the new Illinois foreclosure law that "it cannot be said that a judgment of foreclosure under the IMFL [new foreclosure law] terminates the pre-foreclosure relationship between mortgagor and mortgagee." The opinions in those cases are referred to for the rationale thereof.

Those decisions found that because the relationship of mortgagor and mortgagee is not terminated by foreclosure judgment order, whether under the former or current foreclosure law in Illinois, a Chapter 13 debtor retains the option under § 1322(b)(5) to propose a cure of the mortgage default even after entry of that judgment.

However, that right to cure stems from the continued existence of the mortgage. For reasons discussed in the foregoing cited cases (and the authority cited in those cases), it must be concluded that the creditor here still has a "security interest" in Debtors' home through its original mortgage, not merely through a judgment lien

if such judgment was in fact entered. Its interest is therefore a "lien created by agreement," the definition of "security interest" under § 101(45) and referred to in § 1322(b)(2).

It cannot be doubted, nor has Debtor questioned, that the proposed Judgment Order would modify the contract rights of the Bank under the mortgage—rights to amounts and timing of payments, interest rate, and foreclosure for nonpayment, to mention the most obvious. While the stay of foreclosure is not a Plan "modification" of creditor right's that by itself is forbidden by § 1322(b)(2), the other modifications are forbidden by that provision in the case of Debtors' principal residence.

Accordingly, in the absence of any Bank agreement to the Plan and proposed "Special Mortgage Order," the Debtors cannot modify the Banks security interest but can cure and deaccelerate the mortgage if they qualify to do so under § 1322(b)(5).

2. *These Debtors may not cure under § 1322(b)(5).*

Debtors rely primarily on the following cases:

*Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir. 1984 *en banc* ); *Larkins v. Commercial Bank of Dawson,* 50 B.R. 984 (D.W.D.Ky. 1985); *In re Minick,* 63 B.R. 440, 14 B.C.D. 921 (Bankr.D.D.C.1986); *Blinde v. Spader,* 66 B.R. 618 (W.D.Mo.1986); *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn.1982); *In re McSorley,* 24 B.R. 795 (Bankr.D.N.J. 1982).[1]

The above cases discuss what is argued to be a conflict between Sections 1322(b)(2) and (5) and Sections 1322(b)(3) and (10). Section 1322(b)(3) and (10) provide that a Chapter 13 plan may

(3) provide for the curing or waiver of any default;

.       .       .       .       .

(10) include any other appropriate provisions not inconsistent with this title.

The *Blinde* court found a difference of opinion among the courts that have considered this issue. The court stated that Congress had two aims in passing Section 1322:

1. To protect debtors' homes by curing defaults and making regular payments on their mortgages;

2. To protect the lender secured only by a security interest in the debtor's home, especially those secured by long-term mortgages.

*Blinde,* 66 B.R. at 621.

Notwithstanding these conflicting goals the court held that:

the rehabilitative purpose of Chapter 13 is the primary aim of the bankruptcy code. The rigid interpretation of Section 1322(b)(2) imposed by the Ninth Circuit in *Seidel* [752 F.2d 1382 (9th Cir.1985) ] defeats that aim.

*Blinde,* 66 B.R. at 621.

The *McSorley* court relied primarily on the reasoning of Judge Kelly in the case of *In re Simpkins.* Under Kelly's reasoning, the *McSorley* court found that a creditor's claim is not modified if he receives 100% of what he is due plus the interest accruing up until the time of payment. Furthermore, the *McSorley* court stated that the purpose of Section 1322(b)(2) was to prevent the application of the "cramdown" provision of the Bankruptcy Code on the holder of a claim secured solely by residential real estate. *McSorley,* 24 B.R. at 798.

The *McSorley* court went on to quote Judge Kelly's opinion in *In re Simpkins* as follows:

The authority given by Section 1322(b)(5) amounts to specific authority for dealing with claims secured only by the debtor's residence and on which the last payment is due after completion of the plan. Specific authority is not needed for such claims on which the last payment is due during the plan. General authority is found in subsection [ (b)(3) as curing de-

---

**1.** Debtor also relied at the hearing on *In re Kokkinis (Tinley Park Bank v. Craig Phelps),* 22 B.R. 353 (N.D.Ill.,1982), the reasoning of which

is superseded by *Clark, Schnupp, Tukes,* and *Josephs,* supra.

faults and in subsection] (b)(10), which allows the plan to include any provision not inconsistent with the Bankruptcy Code.

*In re Simpkins,* 16 B.R. at 964, *cited in McSorley,* 24 B.R. at 798.

The *McSorley* court agreed with the above quotation and found that Sections 1322(b)(2) and (5) do not specifically prohibit the debtors from curing the default on the debt in question.

The Fifth Circuit in *Grubbs* did a lengthy examination of the legislative history and determined that:

Section 1322(b) of the Code, construed in the light of its legislative history and of its context within Chapter 13 as a whole, evinces no legislative intent that a home-mortgagor debtor is barred either (a) from curing a pre-petition acceleration into maturity of the unpaid installments due upon his home mortgage, or (b) from proposing (in his Chapter 13 plan for consideration by the bankruptcy court) that all past due or matured amounts secured by his home mortgage be paid during the term of his plan....

*Grubbs,* 730 F.2d at 237.

The Debtors argue that this Court is authorized to confirm their plan by virtue of Sections 1322(b)(3) and (10) and that such a view is consistent with the rehabilitative purpose of Chapter 13. The gist of their argument, supported by the foregoing authority, is that no Code provision expressly bars cure of a mortgage that comes due by its terms before the cure, and that the general provision allowing cure under § 1322(b)(3) gives authority here even though the specific provision under § 1322(b)(5) does not.

In response, the Bank relies primarily on the provisions of § 1322(b) and the cases below:

*In re Seidel,* 752 F.2d 1382 (9th Cir. 1985); *In re Palazzolo,* 55 B.R. 17 (Bankr. E.D.N.Y.1985); and *Matter of LaPaglia,* 8 B.R. 937 (Bankr.E.D.N.Y.1981).

The court in *In re Palazzolo,* 55 B.R. at 18, held that a debtor may not use a Chapter 13 plan to modify the rights of a creditor who holds a security interest in the debtor's principal residence. Nor may the debtor use a Chapter 13 plan to extend the final due date of the mortgage.

Similarly, the case of *Matter of LaPaglia,* 8 B.R. at 940–41, found that defaults on secured claims may be cured within a reasonable time, but only if the last payment of the original obligation is due after the date on which the final payment under the plan is due. In other words, defaults on debts that come due before the last payment under a Chapter 13 plan are not susceptible to cure under § 1322(b)(5).

Lastly, *In re Seidel,* 752 F.2d at 1384, held that when a Chapter 13 plan proposes to extend the time for payment beyond the time originally contemplated by the creditor, the creditor's rights are said to be modified. Where debtor attempts to modify his home mortgage through a Chapter 13 plan, the plan should not be confirmed.

In light of the above cases First National Bank argues that the Debtors' Plan should not be confirmed.

■ This Court agrees with the rationale cited by the Bank. The amended Chapter 13 Plan that Debtors propose to this Court will, in its shortest version, extend the final payment on the mortgage obligation by about five months after the November 10th due date, thereby modifying the mortgage agreement between Debtors and The First National Bank of Chicago. Such modification is prohibited under the Bankruptcy Code. *See, In re Seidel,* 752 F.2d 1382 (9th Cir.1985); *In re Palazzolo,* 55 B.R. 17 (Bankr.E.D.N.Y.1985); *Matter of LaPaglia,* 8 B.R. 937 (Bankr.E.D.N.Y.1981).

*In re Seidel* addressed a situation where the debt had matured by its terms, without acceleration, prior to the filing of the Chapter 13 petition. The court ruled that the proposed Plan, which postponed final payment of the matured debt, was a modification of the original mortgage agreement and violated Section 1322(b)(2). *In re Seidel,* 752 F.2d 1382, 1383 (9th Cir.1985). The court further stated that the cure provision in § 1322(b)(5) was not available to

the debtor since there was no default to cure. *Id.*

*Seidel* distinguished *Grubbs v. Houston First America Saving Association*, 730 F.2d 236 (5th Cir.1984). The major differences between *Seidel* and *Grubbs*, as described by the *Seidel* court, was the nature of the debt. In *Grubbs*, the lender chose to exercise its power to accelerate the mortgage note. Therefore, the court in *Grubbs* had to decide whether an accelerated debt could be accommodated by a Chapter 13 plan. In *Seidel*, the mortgage note matured by its own terms. The due date was not accelerated by the lender; the mortgage came due under the terms of the original contract. The *Grubbs* court reasoned that its debtor could pay the amount in default and cure in compliance with § 1322(b)(5), and then continue his payments after the Chapter 13 plan was completed in accordance with the original pre-accelerated note. In *Seidel* however, the debt subject to the Plan was the entire amount owing on the debt. The debtor in *Seidel* was not attempting to "catch-up" on his payments; rather, he was attempting to extend his time to pay a debt which became due and payable in full before his payments under the Plan would have been completed. The Court concluded its analysis by stating that "the language and legislative history of Chapter 13 demonstrate congressional intent to protect home mortgage lenders." *In re Seidel*, 752 F.2d 1382, 1383 (9th Cir. 1985).

Shortly after the *Seidel* case, the Eastern District of New York applied the same reasoning to decide *In re Palazzolo*, 55 B.R. 17 (Bankr.E.D.N.Y.1985). *Palazzolo* held that a debtor could not modify his creditor's rights by extending the time to pay the mortgage. *See Id.* at 18. In *Palazzolo*, the residential mortgage in question was not accelerated by the lender; the loan had matured by its own terms. The debtor no longer had the option of curing his default, thereby reinstating the original loan agreement, because the entire amount of the note was due prior to the final payment of the Chapter 13 plan. Under those facts, *Palazzolo* concluded that "11 U.S.C. 1322(b) expresses Congress' intent

to protect mortgage lenders". *See Id.* at 18. Therefore under Sections 1322(b)(2) and 1322(b)(5), the debtor could cure any defaults through his Chapter 13 plan, but could not extend the final due date of the mortgage. *See Id.* at 18.

The case at bar can easily be distinguished from *Grubbs*, and its line of cases. As in *Seidel* and *Palazzolo*, but unlike the facts in *Grubbs*, the Davis' debt will become due and payable in its entirety, by its own terms, long before the last payment of the proposed Chapter 13 Plan. Paying the debt owed to The First National Bank of Chicago would not consist of "catching-up" on back payments in order to reinstate the original loan agreement. The Davis' attempt to extend their obligation to the Bank past the date originally contemplated and agreed to by the parties is a modification of their home mortgage and note which is prohibited under the Bankruptcy Code, 11 U.S.C. § 1322(b)(2), and is not a permitted cure under § 1322(b)(5).

The foregoing reasoning is consistent with the discussion of § 1322(b)(5) by the Seventh Circuit panel in *Clark* which rejected part of the reasoning in *Grubbs*:

> The Bank also argues, however, that (b)(5) does not apply to its claim against the Clarks, for as a result of the acceleration the debt had to be paid in full if at all. Thus, the Bank contends, its claim was not a "claim on which the last payment [was] due after the date on which the final payment under the plan [was] due." 11 U.S.C. § 1322(b)(5). The panel opinion in *Grubbs*, 718 F.2d 694, 698 (5th Cir.1983), adopted this view. We find this argument unpersuasive. Most notes provide that the lender can accelerate the payments upon any default, and some provide for automatic acceleration. In either case, it is probable that acceleration would occur before the debtor could file a chapter 13 petition. The Bank's construction would render (b)(5)'s preservation of the ability to cure defaults all but meaningless. At the very least, the Bank's construction would encourage debtors to file bankruptcy petitions at the earliest possible moment

rather than attempt to work out their financial problems short of judicial proceedings. We do not think that Congress intended cure under (b)(5) to be unavailable to all but the fleet of foot, and we therefore hold that we are to look to the date of the last payment *under the note* rather than after acceleration has occurred. The result of this is that the Clark's plan did nothing that is not permitted by § 1322(b).

*Clark*, 738 F.2d at 874. (Emphasis in the original.)

The foregoing reasoning in *Clark* indicated that the § 1322(b)(5) cure would have been unavailable had the date of last payment under the mortgage note preceded the proposed cure. That situation, of course, is present here. The better reasoned authority and the Seventh Circuit in *Clark* focused on the prohibition in § 1322(b)(2) and the limited right to cure under § 1322(b)(5). Those two provisions read together indicated a clear statutory scheme to deal in Chapter 13 of the Code with a debtor's principal residence. The general language of § 1322(b)(3) cannot be applied to negate the express language in § 1322(b)(2) and (b)(5). Therefore the Plan proposed here is indeed "inconsistent with" § 1322(b)(2) and (b)(5), thus making the general language of § 1322(b)(10) of no avail to Debtors.

## CONCLUSION

Congress has provided a special limitation on the ability of Chapter 13 debtors to modify the rights of secured mortgage creditors as to their homes, and also a special but limited right to cure arrearages in order to save those homes. Congressional intent is quite clear, and debtors must follow the path laid out by statute and are bound by the statutory limits. Unless they can negotiate creditor agreement to a Special Mortgage Order of the sort presented here, such order and the Plan related to it may not be "crammed down" as part of a Chapter 13 Plan in the face of § 1322(b)(2) and § 1322(b)(5). These Debtors are barred from modifying the Bank's security interest by § 1322(b)(2) and are not entitled to cure under § 1322(b)(5). Their Plan and all proposed variations of it are flawed as to the Bank. The Chapter 13 Plan was offered as adequate protection under § 11 U.S.C. § 362(d)(1) and Debtors have not met their burden under § 362(g)(2) to provide such protection because that Plan is flawed. The stay must therefore be modified in favor of the Bank and the requested Plan modifications and Creditor Order must be denied.

In the forthcoming foreclosure sale, of course, the Bank must be mindful of Debtors' rights under the provisions of Code § 548(a)(2)(A) as recently interpreted by our Seventh Circuit in *In re Bundles*, 856 F.2d 815 (7th Cir.1988), particularly given Debtors' contentions as to value and mortgage balance as to the instant home. However those issues are not presented here.

Orders will be entered separately in accord with this opinion.