**In re Robert AGUIRRE and Ester Aguirre, Debtors.**

**Bankruptcy No. 592–50593–13.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Feb. 19, 1993.*

* This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bank-

Tom R. King, Law Offices of Tom R. King, Lubbock, TX, for debtor.

Max R. Tarbox, McWhorter, Cobb & Johnson, L.L.P., Lubbock, TX, for the Bank.

Robert B. Wilson, Sims, Kidd, Hubbert & Wilson, Lubbock, TX, Chapter 13 Trustee.

## MEMORANDUM OF OPINION ON CHAPTER 13 PLAN

JOHN C. AKARD, Bankruptcy Judge.

In this case, the court concludes that the Debtors can pay, in monthly installments during the life of their Chapter 13 Plan, the balance due on a note secured by a lien on their homestead which matured by its terms prior to the filing of the Chapter 13 petition.[1]

### FACTS [2]

On April 20, 1987, Robert Aguirre and Ester Aguirre (Debtors) borrowed $11,-160.00 from the American Bank of Commerce at Wolfforth (Bank) secured by a lien on their homestead in Wolfforth, Tex-

---

ruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro*

*Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(G) and (L).

2. The court adopts the stipulations filed by the parties on December 2, 1992. The court will state only such facts from that stipulation and from the record of this case as are necessary to a decision in this matter.

as. The Debtors concede that the Bank's lien is valid. The note was payable in installments of $258.24 each including interest on the unpaid balance at the rate of 13.5% per annum. Apparently the Debtors were unable to make the payments as they became due because on October 19, 1990, the parties entered into a Modification Agreement extending the then-balance of $6,524.90 so that it would be payable at $258.24 per month beginning November 15, 1990 until June 6, 1992, when the entire balance of the note would come due. However, the note was not paid in June, and the property was posted for a foreclosure sale on the first Tuesday in September, 1992.

The Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on September 1, 1992. The Bank asserts that the principal balance due on the note is $3,752.65, and requests both pre- and post-petition attorney's fees as well as postpetition interest. The parties agree that the homestead has a value of $24,400.00.

In their Chapter 13 Plan, the Debtors listed the claim of the Bank at $2,635.89 and proposed to pay it in monthly installments with interest at 10% per annum. On September 22, 1992, the Debtors filed a Motion for Valuation and Confirmation and Objection to Claims in which they objected to all claims except to the extent the Plan provided for them. On October 14, 1992, the Bank filed an Objection to the Plan. On October 19, 1992, the Bank filed a Motion to be Relieved from the Automatic Stay.

## POSITIONS OF THE PARTIES

The Debtors assert that they are entitled to cure their default during the term of the Chapter 13 Plan pursuant to § 1322(b)(3) of the Bankruptcy Code,[3] citing *Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236 (5th Cir.1984) (*en banc*). The Bank points out that *Grubbs* involved an

obligation which matured by acceleration rather than one which matured by its terms prior to the filing of the bankruptcy and urges this court to follow a case directly on point, *Seidel v. Larson* (*In re Seidel*), 752 F.2d 1382 (9th Cir.1985).

## STATUTE

At issue are subdivisions (2), (3) and (5) of § 1322(b), which read as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims:

(3) provide for the curing or waiving of any default;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

## DISCUSSION

■ This court must follow the Fifth Circuit's *en banc* decision in *Grubbs.* The *Grubbs* court determined that a Debtor's right to cure a default during a Chapter 13 Plan as contained in § 1322(b)(3) was not limited by the provisions of § 1322(b)(2) or (5). The court stated:

In context, and as explained by their legislative history ... the final amendments to subsections (b)(2) and (b)(5) of § 1322, did not, with regard to home mortgages, affect the general provision of Chapter 13, *see* § 1322(a), that permit-

---

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

ted a petitioner's plan to pay from future income over the term of the plan any matured pre-petition obligations, whether secured or unsecured; nor did these amendments intend to affect the authorization for a Chapter 13 plan either (1) to cure any default with regard to debts that were provided for by the plan, § 1322(b)(2), or (2), to cure any default within a reasonable time and to maintain payments upon a nondischargeable long-term obligation, whether secured or unsecured, § 1322(b)(5).

730 F.2d at 246 (citation omitted).

In *Seidel*, the Ninth Circuit sought to distinguish *Grubbs* and similar cases by pointing out that those cases related to notes which matured as a result of acceleration rather than notes which matured by their terms. The *Seidel* court acknowledged that its decision conflicted with *Grubbs, Seidel*, 752 F.2d at 1385. This court, being situated in the Fifth Circuit, must follow the Fifth Circuit's direction.

 This court also finds persuasive the reasoning in *Blinde v. Spader (In re Spader)*, 66 B.R. 618 (W.D.Mo.1986) wherein the court said:

> The purpose of Chapter 13 of the Bankruptcy Act of 1978, as amended ... is to rehabilitate individual debtors while protecting the interests of creditors.

*Id.* at 620 (citation omitted).

> This Court finds that curing default of this short-term mortgage loan which is secured only by debtor's principal residence is not an impermissible modification within the meaning of 11 U.S.C. § 1322(b)(2).

66 B.R. at 620.

> This Court believes that the rehabilitative purpose of Chapter 13 is the primary aim of the bankruptcy code. The rigid interpretation of Section 1322(b)(2) imposed by the Ninth Circuit in *Seidel* defeats that aim.

66 B.R. at 621.

This court located only one Fifth Circuit case decided subsequent to *Grubbs* which addresses these issues: *In re Amerson*, 143 B.R. 413 (Bankr.S.D.Miss.1992). The *Amerson* court, without analysis and without citing *Grubbs*, followed *Seidel*. For the reasons stated above, this court respectfully disagrees with that conclusion.

 The value of the homestead greatly exceeds the Bank's debt so the Bank is entitled to both pre- and postpetition interest, costs and attorney's fees to the extent the Bank's documents provide for them. § 506(b). The Bank is entitled to the contract rate of interest. *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72 (5th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992). Since the 13.5% contract rate of interest exceeds current market rates, the court will not allow the Bank a post-default rate.

### CONCLUSION

Because of the Fifth Circuit's direction in *Grubbs* and in furtherance of the Congressionally-mandated policy expressed in the Bankruptcy Code to give financially distressed debtors a reasonable opportunity to save their homes through a Chapter 13 plan, the court will give the Debtors an opportunity to modify their plan to provide for full payment of the Bank's claim (including interest, costs and attorneys' fees) at the unaccelerated contract rate of interest. The Bank's Motion to be Relieved from the Automatic Stay will be denied without prejudice to filing another such motion if the Debtors do not timely secure confirmation of a plan.