**In re Sallie M. AMERSON.**

**Bankruptcy No. 9109284 HEG.**

United States Bankruptcy Court,
S.D. Mississippi.

July 29, 1992.

Milton A. Schlesinger, Hattiesburg, Miss., for plaintiff.

David L. Lord, James W. Wilson & Associates, Biloxi, Miss., for defendant.

## OPINION

EDWARD R. GAINES, Bankruptcy Judge.

There came before the Court for consideration the objection to confirmation of plan and the motion to terminate stay filed on behalf of C & F Financial Services of Hattiesburg, Inc. Having reviewed the pleadings and the legal briefs submitted on behalf of the parties, the Court is of the opinion that the objection to confirmation should be sustained and the motion to terminate stay should be granted.

### I. FACTS[1]

1. Sallie M. Amerson executed a note in favor of C & F Financial Services of Hattiesburg, Inc., on June 4, 1987, in the principal amount of $14,100.00, payable over four years in monthly payments of $250.00 and with final balloon note of $13,247.61 due June 15, 1991. Co-borrowers on the note were Maggie Amerson and Isaac Farmer, the sister and step-father of the debtor.

2. A second deed of trust on the debtor's principal residence was executed in favor of C & F Financial to secure the above referenced note.

3. In addition to the real estate, a security interest was taken in a 1978 Pontiac

---

1. Portions of factual background are taken from pleadings submitted on behalf of the parties.

Grand Prix. Credit life insurance was also purchased.

4. C & F Financial released its lien on the automobile in February of 1989. C & F indicates that the automobile lien was released *at the debtor's request.*

5. Amerson failed to pay the final balloon payment when it became due on June 15, 1991.

6. Sallie M. Amerson filed a petition for relief under Chapter 13 of Title 11 of the United States Code on September 5, 1991.

7. The debtor filed a Chapter 13 plan in which she proposed to pay mortgage arrearages, through June of 1991, in the amount of $13,029.99 to C & F Financial. The plan was proposed was to be paid over 60 months.

8. Creditors were notified by the bankruptcy court that objections to plan confirmation had to be filed 5 days prior to the confirmation hearing, which was noticed for November 15, 1991.

9. On November 8, 1991 an order was entered granting C & F Financial a 15–day extension of time to file an objection to confirmation.

10. A timely objection to confirmation was filed by C & F.

11. An order of confirmation was erroneously entered on November 15, 1991. On December 19, 1991 an order setting aside the order confirming the debtor's plan was entered.

12. A motion to terminate stay and for relief from stay of action against codebtor was filed by C & F Financial Services.

13. Briefs were subsequently filed by the parties and the issues were presented to the Court for determination.

## II. CONCLUSIONS

The matters before the Court are core proceedings under 28 U.S.C. § 157. The Court has jurisdiction pursuant to 28 U.S.C. § 1334.

The primary areas of focus in this decision are in determining whether the claim of C & F is secured only by the debtor's primary residence or whether the claim is secured by additional collateral, and in determining whether the debtor may include a residential mortgage debt in her Chapter 13 plan that fully matured prior to filing of bankruptcy.

■ Prior to reaching these issues, it is noted that the debtor argues that the plan has been confirmed and that it is therefore binding on the debtor and all creditors pursuant to § 1327 of Title 11. As noted in the factual recitation above, the order of confirmation was set aside by order of this Court dated December 19, 1991. Therefore, the previously entered confirmation order cannot bind any party, without further order of the Court.

■ The debtor also argues in her brief that the order granting an extension of time to C & F was entered without notice to the debtor's attorney. Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), the court for cause shown may at any time in its discretion, with or without motion or notice, order a time period enlarged if the request is made before the expiration of the period originally prescribed or as extended by a previous order, as was the case here. Although C & F asserts that notice of the request for extension was provided to the debtor, it is not necessary for the Court to make this factual determination in light of the above referenced rule.

An additional preliminary argument raised by C & F is that the debtor's plan is not feasible because she has included and "confiscated" social security income of Isaac Farmer as her monthly future income. No authority has been provided to indicate that the debtor may not use funds provided by another person to propose a Chapter 13 plan, and no evidence has been presented indicating that the debtor has indeed "confiscated" the funds of Isaac Farmer against his will. The information provided in the briefs is not sufficient for the Court to make a determination on this issue at the present time.

■ The Court next considers issues relating to collateral held by C & F. Section 1322 of the Title 11 provides the following

in reference to debts secured by a debtor's residence:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

11 U.S.C. § 1322(b)(2). The note and security agreement indicate that at the time the loan was made in June of 1987, collateral included the debtor's residence and a 1987 Pontiac Grand Prix automobile, as well as a credit life insurance policy. The lien on the automobile was released at the debtor's request in February 1989, approximately 2½ years prior to the debtor's petition in bankruptcy.

■ Section 1322(b)(2) would have clearly allowed the debtor to modify the rights of C & F with regard to the security interest as originally executed, since the security included other property in addition to the principal residence. *See, In re Dent,* 130 B.R. 623 (Bankr.S.D.Ga.1991). However the impact of releasing the automobile lien and the timing of the release, whether prepetition or postpetition, must be considered.

Section 502 of the Bankruptcy Code provides the following in reference to the time for determining claims:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, ...

11 U.S.C. § 502. Regarding the time for determining the secured status of a claim, the Court in *In re Green,* 7 B.R. 8 (Bankr. S.D.Ohio 1980) reached the following conclusion:

> This Court holds that the crucial time for determination as to whether a creditor is

entitled to invoke the protected status of a creditor secured only in residential real estate is the time of the filing of the petition. BancOhio, at the time of this filing, was not a creditor secured only by a lien on residential real estate and thus it is not entitled to object to confirmation based upon a possible modification of its rights and the prohibition in § 1322(b)(2).

7 B.R. at 9. *See also, In re Groff,* 131 B.R. 703 (Bankr.E.D.Wis.1991). Thus, the appropriate time for determining the status of a creditor's claim is the time of filing of the debtor's petition.

■ In *In re Dent,* 130 B.R. 623 (Bankr. S.D.Ga.1991), the Court pointed out that "a secured creditor cannot, postpetition, improve its position under § 1322(b)(2) by releasing its lien against only part of its collateral". *Id.* at 630. *Accord, Wilson v. Commonwealth Mortg. Corp.,* 895 F.2d 123 (3rd Cir.1990); *In re Green,* 7 B.R. 8 (Bankr.S.D.Ohio 1980). Where collateral is released prepetition, however, the debt may, under appropriate circumstances, be considered one that is secured only by the principal residence. In *In re Scheihing,* 1990 WL 303940 (E.D.Okla.1990), it was stated that:

> The personal property which secured the debt had been disposed of prior to appellants' filing of their Chapter 13 bankruptcy case. Absent proof of an improper motive on the part of appellee in releasing its claim to the personal property, (citation omitted), the debt was properly construed as being secured only by appellants' principal residence. (citation omitted). Thus, as correctly noted by the Bankruptcy Court, the proposed modification under § 1322(b)(2) should be denied because the debt was secured only by a security interest in appellants' principal residence.

1990 WL 303940 at p. 2. *See also, In re Dent,* 130 B.R. 623 (Bankr.S.D.Ga.1991). In *In re Ivey,* 13 B.R. 27 (Bankr.W.D.N.C. 1981) the Court stated that:

> There is no prohibition upon the action taken by Southern Discount Company in releasing its lien on household goods pri-

or to the filing of the Chapter 13 Proceeding; ...

That Southern Discount Company would release its lien on household goods some four months in advance of the filing of a Chapter 13 Petition by these debtors is an action consistent with much of the legislative history of 11 U.S.C. § 1322(b)(2) and is an action more properly to be commended than utilized as a basis for modification of the payments to the creditor holding a second deed of trust on the residence of the debtors; ...

The lien of Southern Discount Company on the household goods of the debtors was validly cancelled and the lien on the title to their 1972 automobile was properly released more than four months prior to the filing of the Chapter 13 proceeding by the debtors, and as a result, Southern Discount Company is a holder of a claim secured only by a security interest in real property that is the debtors' principal residence and the contract payments of $112.00 per month may not be modified as part of the Chapter 13 Plan of the debtors.

13 B.R. at 28.

Importantly, if the creditor has not acted in good faith in cancelling a security interest, it will not be allowed to gain the benefits of Section 1322(b)(2). In *In re Baksa*, 5 B.R. 184 (Bankr.N.D.Ohio 1980) the Court made the following points:

The creditor, as a condition of making the original loan, required the debtors to grant it a secured interest in the following property of the debtors': a motor vehicle, all household furnishings, and a second mortgage on the debtors' residence. The creditor became aware that a petition under Chapter 13 and a plan of arrangement were going to be filed by the debtors ... Therefore, the creditor immediately cancelled its security interest in the household furniture and the motor vehicle in order to come within the provisions of 11 U.S.C. Section 1322(b)(2) ...

It is obvious to the court that the creditors would have never cancelled its secured interest in the household furniture

and the motor vehicle but for the provision in 11 U.S.C. 1322(b)(2) of the Bankruptcy Code.

As previously indicated, the debtor must propose his Chapter 13 plan in good faith. This court holds that the creditor must also act in good faith. Where a creditor, with knowledge that a Chapter 13 petition and plan are being drafted, cancels its secured interest in a portion of the property of the debtor, it holds as security, with the intent of circumventing and abusing the provisions of Chapter 13, the creditor is not acting in good faith. It is the conclusion of this court that the same standards should be applicable to the creditor and to the debtor, especially in this case where the creditor is fully secured and adequately protected and the unsecured creditors would be the only parties injured should confirmation be denied and liquidation occur ...

Therefore, it is the conclusion of this court that the objection of Beneficial Financial Company to the confirmation of the debtors' Chapter 13 plan of arrangement is overruled.

5 B.R. at 186–87. *See also,* 3 *Norton Bankruptcy Law and Practice* § 74.05 (1990); *Bankruptcy Service,* L.Ed. § 8:18 (1990).

There has been no indication here that the release of the automobile lien 2½ years prior to filing of the bankruptcy petition was an action taken with the intent of circumventing and abusing the provisions of Chapter 13. To the contrary, it has been indicated that the release was effected on the debtor's request. Therefore, the release of the lien will not prevent C & F from obtaining the benefit of Section 1322(b)(2).

■ The Court next turns to the impact of a credit life insurance policy on application of Section 1322. Courts have reached differing results on the issue of whether a credit life insurance policy constitutes additional security under Section 1322(b)(2). The Court in *In re Braylock,* 120 B.R. 61 (Bankr.N.D.Miss.1990) stated:

The Court seriously doubts that the voluntary election by a debtor to obtain a

credit life insurance policy, even though the lender is designated the policy beneficiary, creates a "security interest." The credit life insurance policy is not described in the security agreement, nor is there any document that has been presented to this Court that attempts to perfect a lien in or an assignment of the policy.

Two cases cited by the debtor that are particularly on point are *In re Stiles*, 74 B.R. 708 (Bankr.N.D.Ala.1987), and *In re Wilson*, 91 B.R. 74 (Bankr.W.D.Mo.1988). *Wilson* can technically be distinguished from the instant proceeding because the Court here found the creditor to have an additional *security interest*, evidenced by the loan documentation, in the unearned or return premiums that were applicable to three different insurance policies, one of which was a credit life policy. Because this Court is of the opinion that the drafters of § 1322(b)(2) did not contemplate that a credit life insurance policy, naming the creditor as the beneficiary, would be considered an additional security interest, this Court respectfully disagrees with the holding of *Stiles* ... This Court, however, is not persuaded that one optional credit life insurance policy, where the unearned premium is refundable to the debtor and where the proceeds of which would only become available on the debtor's death, is an additional security interest which negates the protective exception found in § 1322(b)(2). Therefore, the debtor will not be permitted to modify Credit Center's secured claim.

120 B.R. at 63–64. *See also, In re Ireland*, 137 B.R. 65 (Bankr.M.D.Fla.1992); *In re Jackson*, 136 B.R. 797 (Bankr.N.D.Ill.1992); *In re Diquinzio*, 110 B.R. 628 (Bankr. D.R.I.1990). This Court agrees with Courts which have held that a credit life insurance policy does not constitute additional security under Section 1322(b)(2).

Based on the above rationale, the Court concludes that the debt of C & F is secured only by a security interest in real property that is the debtor's principal residence. Therefore, pursuant to § 1322(b)(2), the debtor may not modify the rights of C & F under its secured claim through her Chapter 13 plan.

■ The Court further concludes that the inclusion of the fully matured mortgage debt[2], secured only by the debtor's primary residence, in the debtor's Chapter 13 plan, is an impermissible modification of the secured creditor's rights. On this issue as well, Courts have disagreed. In *In re Witomski*, 126 B.R. 205 (Bankr.D.Md.1990) the Court summarized as follows:

2. However, Section 1322(b)(2) forbids the modification of the rights of a creditor whose interest is secured by the debtors' principal residence.

3. A number of courts which have considered the question have held that the postponement of payment of the secured debt beyond the time originally contemplated by the parties amounts to an impermissible modification and that this is even more clearly so when the debt has already matured without acceleration prepetition. *In re Seidel*, 752 F.2d 1382 (9th Cir.1985); *In re Harlan* 783 F.2d 839 (9th Cir.1986); *In re Palazzolo*, 55 B.R. 17 (Bankr.E.D.N.Y.1985); *In re Lumsden*, 112 B.R. 978 (Bankr. W.D.Mo.1990); *In re Cooper*, 98 B.R. 294 (Bankr.W.D.Mich.1989).

4. This Court expresses its strong disapproval of the line of cases which have held to the contrary. *In re Bolden*, 101 B.R. 582 (Bankr.E.D.Mo.1989); *In re Spader*, 66 B.R. 618 (W.D.Mo.1986); *In re Mcsorley*, 24 B.R. 795 (Bankr.D.N.J. 1982); *In re Larkins*, 50 B.R. 984 (W.D.Ky.1985); *In re Minick*, 63 B.R. 440 (Bankr.D.D.C.1986).

5. The language in Section 1322(b)(2) does not differentiate between long-term mortgages and short-term indemnity deeds of trust, but speaks only generally in terms of a "claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (1988) ...

---

**2.** The final balloon note became due in June of 1991, prior to the debtor's September 1991 filing. Thus, the debt naturally matured, without acceleration, prior to filing.

6. The claim of Equitable Bank is fully secured by a security interest in real estate which is the debtors' principal residence ...

7. Section 1322(b)(3) and (b)(5) which provides debtors a right to cure a default by maintaining regular payments and paying off the arrearage within a reasonable time is unavailing in this case. Because the debt has fully matured without acceleration, the reinstatement of its original terms will render the debt immediately due and payable.

8. Because the debtors' Chapter 13 plan impermissibly modifies the fully secured claim of Equitable Bank, confirmation of the plan will be denied upon the Bank's objection.

9. Because Equitable Bank has proven to the satisfaction of this Court that cause exists to lift the automatic stay, including a lack of adequate protection, the stay will be lifted forthwith to permit the Bank to exercise its rights under the matured indemnity deed of trust and to foreclose upon its collateral.

126 B.R. at 207–08. *See also In re La Brada,* 132 B.R. 512 (Bankr.E.D.N.Y.1991); *In re White,* 47 B.R. 98 (Bankr.S.D.Tex. 1985); Tim A. Thomas, Annotation, *Bankruptcy: Chapter 13 Plan Delaying Payment of Unaccelerated Matured Residential Debt As Improper Modification of Creditor's Rights Under 11 USCS § 1322(b)(2),* 91 A.L.R.Fed. 512 (1989).

This Court agrees with the line of cases indicated in *Witomski* that hold that a debt secured only by a security interest in the debtor's primary residence, which fully matured prior to filing, may not be modified by the debtor in a Chapter 13 plan, pursuant to Section 1322(b)(2). This holding is also consistent with this Court's previous ruling in *In re Peterson,* No. 8907458 (Bankr.S.D.Miss.1989).

Based on the above conclusions, the Court is of the opinion that the objection to confirmation by C & F Financial Services of Hattiesburg, Inc. should be sustained and the motion for relief from stay should be granted.

This opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

An order will be entered consistent with these findings and conclusions pursuant to Federal Rule of Civil Procedure 58 and Federal Rule of Bankruptcy Procedure 9021.