**In re Davis Neal HOWARD, Debtor.**

**Bankruptcy No. 96–51157.**

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Feb. 18, 1998.

Phillip N. Golub, Blackshear, GA, for Debtor.

Lawrence B. Lee, Asst. U.S. Atty., Savannah, GA, for Creditor.

Sylvia Ford Brown, Savannah, GA, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES E. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court in response to an Objection to Confirmation by the United States of America ("Creditor") regarding valuation of its claim. The issue is whether Creditor's claim is one "secured only by a security interest in real property that is the debtor's principal residence" within the meaning of 11 U.S.C. § 1322(b)(2). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L) & (O). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On May 19, 1976, Davis Neal Howard ("Debtor") purchased two tracts of real property, one of approximately 103 acres of land with no improvements, and the other, a smaller tract, where Debtor's principal residence was erected. On the purchase date, a Promissory Note and a Deed To Secure Debt were executed by Debtor in favor of Creditor. The Deed To Secure Debt granted Creditor a security interest in both tracts. Debtor filed this bankruptcy case on December 12, 1996. Following the purchase of the two properties, the debt was refinanced sev-

eral times, and the tract containing approximately 103 acres of land was foreclosed.[1] There is no evidence showing that any of the loan documents exhibited at the trial of this case were amended either orally or in writing following the foreclosure. Debtor continues to reside on the tract containing the residence as he has since the filing of this case.

### Conclusions of Law

Bankruptcy Code section 1322(b)(2) states that "the plan may ... modify the rights of the holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." The issue to be decided here is whether this provision protects Creditor's claim from modification. This determination is complicated by the fact that while the loan documents grant Creditor a security interest in both the principal residence real estate and the 103–acre tract, the only collateral in which Debtor still had an interest at the time of filing this case was the tract containing the principal residence. This Court concludes that in deciding whether the protection of 1322(b)(2) applies, there is no need to look beyond the language of the agreement as it existed between Creditor and Debtor at the time of the filing of the petition.

■ The critical date for deciding whether a creditor qualifies for section 1322(b)(2) protection is the date that the petition is filed. *In re Amerson,* 143 B.R. 413, 416 (Bankr.S.D.Miss.1992); *In re Dinsmore,* 141 B.R. 499, 505–06 (Bankr.W.D.Mich.1992). This rule discourages creditors from disclaiming security interests post-petition in order to gain protection from modification of their claims under section 1322(b)(2). *Dinsmore,* 141 B.R. at 506. This limitation on modification was intended to protect the traditional home mortgage lender. *Id.* A creditor's post-petition actions should not allow it to benefit from this narrow exception to a debtor's right to restructure his debts. *Id.* See also *Dent v. Associates Equity Svs. Co, Inc. (In re Dent),* 130 B.R. 623, 630 (Bankr. S.D.Ga.1991) ("[The creditor's] postpetition release of its security interest in the debtor's

escrow account payments is irrelevant for purposes of a § 1322(b)(2) analysis. At the time of the debtor's filing under Chapter 13, [the creditor] held a valid, perfected security interest in the escrow account payments.").

■ Even with this rule, the question remains in this case as to whether the claim is one secured solely by Debtor's principal residence real estate or one which is also secured by other collateral. The Court holds that this determination is to be made by examining the language of the agreement as it exists at the time of the filing of the petition, regardless of the existence or value of collateral which is available to secure creditor's claims as of the time of filing the case. This conclusion is supported by the language and purpose of section 1322(b)(2), as well as the nature of the protection creditors seek by its implementation.

Section 1322(b)(2) states that claims "secured only by a *security interest* in real property that is the debtor's principal residence" are protected from modification. 11 U.S.C. § 1322(b)(2) (emphasis added). The Bankruptcy Code defines "security interest" as a "lien created by agreement." Thus, the key item of evidence to be examined in making the determination is the agreement itself.

■ This conclusion is further supported by the purpose and policy of section 1322(b)(2). The section was enacted to protect the traditional home mortgage lender. *Dinsmore,* 141 B.R. at 506. One court explained this purpose as follows:

> Although the legislative history is silent, the plain intent of the exception is to provide stability in the residential long-term home financing industry and market. It is to specifically protect institutional lenders engaged only in providing long-term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts.

*United Companies Fin. Corp. v. Brantley,* 6 B.R. 178, 189 (Bankr.N.D.Fla.1980). Thus,

---

1. In a hearing held on August 19, 1997, the parties testified that this property had been foreclosed approximately nine or ten years prior to the filing of this bankruptcy case.

where loan documents grant a creditor security interests in principal residence real estate and other collateral, such creditor does not qualify for the protection of section 1322(b)(2), even where the only collateral which is still available to be levied upon at the petition date is the principal residence real estate. Creditors who take security interests in other collateral in addition to the principal residence real estate are usually attempting to secure debt transactions that are unlike the traditional home finance transactions which the statute is intended to protect. If, however, an agreement, like the one in this case, is modified to reflect the change in collateral, it could be assumed that the parties would have contracted for such a modification with a view toward the protection that section 1322(b)(2) provides.[2]

Finally, in order to understand section 1322(b)(2), it is important to examine the nature of its protection. This provision protects a creditor from modification under the debtor's plan. It is unfair for a creditor, at the same time, to seek what amounts to a modification of the agreement in the form of requesting that the Court disregard a provision that provides for collateral in addition to the debtor's principal residence real estate. Thus, unless the agreement has been modified by agreement of the parties to provide that the sole collateral is the debtor's principal residence real estate, the fact that additional collateral is no longer available or has no value is not sufficient to bring that creditor's claim within the protection of section 1322(b)(2).

Some courts take a different approach to this issue. These courts look first to the agreement which exists at the time of the filing of the petition, and then assess whether changes in the circumstances between the parties were made in good faith on the part of the creditor. One such court explained the concept as follows:

[T]he debtor must propose his Chapter 13 plan in good faith. This court holds that

the creditor must also act in good faith. Where a creditor, with knowledge that a Chapter 13 petition and plan are being drafted, cancels its security interest in a portion of the property of the debtor, it holds as security, with the intent of abusing the provisions of Chapter 13, the creditor is not acting in good faith. It is the conclusion of this court that the same standards should be applicable to the creditor and to the debtor, especially in this case where the creditor is fully secured and adequately protected and the unsecured creditors would be the only parties injured should confirmation be denied and liquidation occur.... Therefore, ... the objection ... to the confirmation of the debtors' Chapter 13 plan ... is overruled.

*In re Amerson*, 143 B.R. 413, 417 (Bankr. S.D.Miss.1992) (quoting *In re Baksa*, 5 B.R. 184, 186–87 (Bankr.N.D.Ohio 1980)). Using this approach, the *Amerson* court granted section 1322(b)(2) protection reasoning that the creditor's prepetition release of a lien did not amount to bad faith. Specifically, the court stated the following:

There has been no indication here that the release of the automobile lien 2½ years prior to filing of the bankruptcy petition was an action taken with the intent of circumventing and abusing the provisions of Chapter 13. To the contrary, it has been indicated that the release was effected on the debtor's request. Therefore, the release of the lien will not prevent [the creditor] from obtaining the benefit of Section 1322(b)(2).

*Amerson*, 143 B.R. at 417.

This Court respectfully disagrees with the approach used in *Baksa* and *Amerson*. The critical element is the agreement itself. The Bankruptcy Code has no provision which requires a court in this circumstance to delve into the good faith, or lack thereof, of the prepetition actions of a creditor. The notion that the court should examine the good faith

---

**2.** The agreement at the time of the filing of the petition may not be the same as the one entered into at the time of the inception of the relationship between the debtor and the creditor. For example, the agreement may have been modified to include or exclude collateral along the way.

Such a modification may give rise to the protection afforded by § 1322(b)(2) when such protection had not been available at the outset of the relationship. Such a modification must, however, be the result of a mutual agreement which satisfies all the criteria of a valid contract.

**720**

of a creditor's prepetition actions may sound like a good idea, but it has no foundation in law. Although it is labeled a good faith analysis, the conclusion in both cases appears to turn on whether the creditor's actions were unilateral or consensual. In *Baksa*, the court denied section 1322(b)(2) protection, reasoning that it was bad faith for a creditor to unilaterally cancel its security interest in non-principal residence collateral with an eye towards bankruptcy. *See* 5 B.R. at 187. In *Amerson*, the court granted section 1322(b)(2) protection, reasoning that it was not bad faith for a creditor to release an automobile lien *at the debtor's request. See* 143 B.R. at 417. Given that the unilateral release of a lien by a creditor resulted in denial of protection from modification in *Baksa* and that the release of a lien by agreement between the debtor and creditor in *Amerson* resulted in granting of protection from modification, this Court agrees with the outcome in both of those cases. However, this Court does not agree with the utilization of a good faith test for that purpose.

The problem with utilizing a good faith analysis instead of merely looking to the terms of the agreement at the time of the filing of the petition is that the basis for making good faith/bad faith distinctions among creditors' actions in the prepetition period is not only unfounded in law, but also confusing and uncertain. Reaching out from a court proceeding to examine the good faith of one of the parties is a dangerous excursion. While it is expressly mandated in some circumstances, it is not an exercise which should be extended to cases where no such criteria has been expressly established. A system of law is best premised on the clarity of plainly stated rules, not on the vagaries of moral or ethical considerations. When a court believes that the law requires it to make a determination based on good faith, the first duty is to clearly identify and state the basis for the requirement of good faith. The requirement should be plainly stated in the code or construed to be implied by some code provision. No such provision is stated and no such implication is apparent in section 1322(b)(2). The court should not create such a requirement to aid in the resolution of ambiguous equities.

Finally, the Court recognizes that, at the time of the August 19, 1997 hearing, neither Debtor nor Creditor had any realistic way of knowing that the outcome of the case would turn on the specific terms of the agreement rather than the status of collateral at the time of the filing of the case. Accordingly, the Court will allow the parties to offer additional evidence on that issue at the continued confirmation hearing to be scheduled in accordance with the Order accompanying this Memorandum Opinion.