In re John LARIOS and Helen
Larios, Debtors.

No. 00 B 31483.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 22, 2001.

Gina B. Krol, Joseph E. Cohen, Cohen &
Krol, Chicago, IL, for Movant.

R. Daniel Lyons, Downers Grove, IL,
for Debtors.

Glenn B. Stearns, Lisle, IL, Chapter 13
Standing Trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy
Judge.

This matter comes before the Court on
the motion to modify the automatic stay
and on the objection of West Suburban
Bank (the "Bank") to confirmation of the
Chapter 13 plan of John Larios and Helen
Larios (the "Debtors"). For the following
reasons, the Bank's objection is overruled
and the motion to modify the stay is con-
tinued to the confirmation hearing. At
issue is whether the Bank's claim can be
bifurcated into secured and unsecured
components and modified under 11 U.S.C.
§ 506(a) and 11 U.S.C. § 1322(b)(2).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

## II. FACTS AND BACKGROUND

In March 1999, the Debtors incorporated a business known as J & H Marble and Glass Engraving Company ("J & H Marble"). In April 1999, they requested a loan from the Bank to fund their new business venture. As security for their $110,000.00 loan, the Debtors, as the president and secretary of J & H Marble, gave the Bank a promissory note on September 19, 1999, secured by a blanket lien and security interest on all of the business assets J & H Marble intended to purchase. Individually, they also granted the Bank a second mortgage on their personal residence. The promissory note granted the Bank a security interest in J & H Marble's "monies, instruments, savings, checking and other deposit accounts" and premises, inventory, machinery, equipment and accounts receivable. The mortgage granted the Bank a junior lien on the Debtors' residence and "all future and present improvements and fixtures; privileges, hereditaments, and appurtenances; leases, licenses and other agreements; rents, issues and profits; water, well, ditch, reservoir and mineral rights and stocks, and standing timber and crops pertaining to the real property." The Debtors also executed their personal guaranty in which the Bank obtained an express right to set off the Debtors' obligations with "any amounts due to [the Debtors] including, but not limited to, monies, instruments, and deposit accounts maintained with [the Bank]." Copies of all these loan documents have been supplied to the Court.

On March 1, 2000, J & H Marble filed a Chapter 7 voluntary petition (Case No. 00 B 06091). The schedules listed various items of personal property, including a cash rental deposit, an account receivable and various items of inventory valued at over $7,600.00, plus an unknown value and amount of marble presumably used in J & H Marble's business. The Bank obtained relief from the automatic stay and allegedly liquidated J & H Marble's equipment and tangible inventory. The record does not disclose what became of J & H Marble's receivables or the deposit, nor whether the Bank released its security interest in any of the J & H Marble collateral.

Thereafter, on May 17, 2000 the Bank obtained a foreclosure judgment against the Debtors for $118,427.05 on its junior mortgage encumbering the Debtors' principal residence. Prior to the scheduled foreclosure sale, the Debtors filed their Chapter 13 petition and plan on October 26, 2000. They filed an amended plan on January 10, 2001.

The amended plan proposes that the Debtors will pay one hundred percent of allowed secured claims and an estimated dividend of ten percent of all allowed unsecured claims through monthly payments of $1,107.00 for a sixty-month period. In their schedules, the Debtors value their home, located at 108 East Montana, Glendale Heights, Illinois, at $105,000.00. Charter One Mortgage holds a first mortgage on the Debtors' residence for which it has filed a proof of claim in the amount of $31,590.19. The Bank filed its proof of claim in the amount of $122,444.60, based on the Debtors' guaranty and junior mortgage on the Debtors' residence.

The Debtors seek to bifurcate the Bank's claim into a secured claim with the balance as an unsecured claim. The Debtors also assert and claim homestead exemptions in the residence aggregating $15,000.00 (these exemptions are expressly waived as to the two mortgagees in the mortgage instruments, as the Bank correctly observes). The Bank objects to con-

firmation of the plan and contends that bifurcation of its allowed undersecured claim would constitute an impermissible modification of its rights under § 1322(b)(2).

## III. *DISCUSSION*

11 U.S.C. § 506(a) generally permits a debtor to bifurcate a secured creditor's claim into secured and unsecured portions if the amount of the claim exceeds the value of the collateral. Specifically, § 506(a) provides that an allowed claim is "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ...." and an allowed claim is an unsecured claim "to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim...." 11 U.S.C. § 506(a).

The Bankruptcy Code, however, also provides that a debtor may not modify the rights of a protected subgroup of secured claimants. In pertinent part, § 1322(b)(2) provides that a Chapter 13 plan may modify the rights of holders of secured claims, "other than a claim *secured only by a security interest in real property that is the debtor's principal residence....*" 11 U.S.C. § 1322(b)(2) (emphasis supplied). The Bank contends that the Debtors cannot bifurcate its undersecured claim into a secured component and an unsecured component because as of October 26, 2000, the day the Debtors' filed their Chapter 13 petition, the Bank's claim was secured only by its junior mortgage on the Debtors' principal residence.

In *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court determined that bifurcation of an undersecured creditor's home mortgage claim constituted an impermissible modification of that creditor's rights under § 1322(b)(2). *Id.* at 329, 113 S.Ct. 2106. The court focused on the distinction between modification of a claim which is permitted under § 506(a) and modification of a creditor's rights which is prohibited by § 1322(b)(2). The *Nobelman* court explained that the portion of the claim that exceeds the market value of the residence is an "unsecured claim component under § 506(a)," but the mortgagee's rights, as reflected by the mortgage instrument, are protected from modification by § 1322(b)(2). *Id.*

Unfortunately, the statute and its legislative history are silent as to what point in time the anti-modification protection applies. This question has produced a split of authority in the reported case law. *See* 2 K. Lundin, *Chapter 13 Bankruptcy* § 121.2 at 121–3–121–9 (3d ed.2000) (collecting cases). Usually, the appropriate measuring point of time would be either the time of the loan, as the Debtors argue, or the subsequent time of the filing of the bankruptcy petition, as the Bank argues. As noted in Judge Lundin's treatise, the majority of courts have held that the critical date for deciding whether a creditor qualifies for § 1322(b)(2) protection is the date the petition is filed. *See In re Howard,* 220 B.R. 716, 718 (Bankr.S.D.Ga. 1998); *In re Lebrun,* 185 B.R. 665, 666 (Bankr.D.Mass.1995); *In re Wetherbee,* 164 B.R. 212, 215 (Bankr.D.N.H.1994); *In re Churchill,* 150 B.R. 288, 289 (Bankr. D.Me.1993); *In re Boisvert,* 156 B.R. 357, 359 (Bankr.D.Mass.1993); *In re Dinsmore,* 141 B.R. 499, 505–06 (Bankr.W.D.Mich. 1992); *In re Amerson,* 143 B.R. 413, 416 (Bankr.S.D.Miss.1992); *In re Groff,* 131 B.R. 703, 706 (Bankr.E.D.Wis.1991); *In re Ivey,* 13 B.R. 27, 29 (Bankr.W.D.N.C.1981); *In re Green,* 7 B.R. 8, 9 (Bankr.S.D.Ohio 1980).

The other line of authority looks at the time the loan was made. *See In re Marenaro,* 217 B.R. 358, 360–61 (1st Cir. BAP 1998) (Judge Hillman held that the reference date is the date most favorable to the debtor, but limited the holding to the facts before the court; Judge Carlo concurred in the result but found that the relevant reference date was the date the loan originated); *In re Smart,* 214 B.R. 63, 67 (Bankr.D.Conn.1997) (court held that the

appropriate reference date is the date the security interest was created rather than the date the petition was filed); *Parker v. Federal Home Loan Mortgage Corp.,* 179 B.R. 492, 494 (E.D.La.1995) (same); *In re Hildebran,* 54 B.R. 585, 586 (Bankr.D.Or. 1985) (same).

■ To date, the Seventh Circuit has not ruled on which date should be used to measure whether a secured creditor is entitled to the anti-modification protection of § 1322(b)(2). Hence, the Court will analyze the situation at both points in time. The Bank, as the objector to confirmation, has the burden of proof under § 1322(b)(2) to invoke the benefits of the statute on which it bases it objection. *See In re Petrella,* 230 B.R. 829, 832 (Bankr.N.D.Ohio 1999) (citations omitted).

■ Turning to the matter at bar, on the date the loan originated, the Bank was granted both a security interest in J & H Marble's personal property and a junior mortgage on the Debtors' personal residence. Accordingly, the Bank could not properly invoke the benefits of § 1322(b)(2) under the line of cases that looks to the date of the creation of the security interest. Although the Bank obtained relief from the automatic stay in J & H Marble's bankruptcy case, and allegedly disposed of the collateral, there is no indication in this record of what it did with J & H Marble's scheduled inventory and receivables or that it ever sold or released its security interest in those assets or filed any termination statement by the time the Debtors filed their petition. The reference in the Bank's reply to that collateral as being "completely valueless," without any explanation of how it was "disposed of," leads the Court to infer that some of the collateral may still have existed as the time of the bankruptcy petition. This is insufficient to meet the Bank's burden to show it is entitled to invoke the protections of § 1322(b)(2). Thus, the Court concludes that the Bank still retained a security interest in the J & H Marble assets at the time of the Debtors' bankruptcy petition.

In short, under an analysis utilizing either point in time, it is the existence of the security interest in the J & H Marble assets that is fatal to the Bank's proper invocation of § 1322(b)(2).

■ The determinative factor is the language used in the underlying loan documents. On both the date the interest was created and the date the bankruptcy petition was filed, the language of the security agreement purported to take a security interest in additional collateral, other than the junior mortgage in the residence, namely J & H Marble's inventory, receivables and equipment. The language in the underlying security agreement determines whether a creditor is entitled to protection from modification because § 1322(b)(2) states that claims "secured only by a *security interest* in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis supplied); *See Howard,* 220 B.R. at 718 ("regardless of the existence or value of collateral which is available to secure creditor's claims...."). For purposes of applying § 1322(b)(2), it matters not whether the security interest has attached, nor whether it is perfected, only whether it is extant and not released, satisfied or otherwise terminated.

The Code broadly defines a security interest as a "lien created by an agreement." 11 U.S.C. § 101(51). The Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Bankruptcy Code definition of "security interest" does not restrict the term's meaning to the Uniform Commercial Code definition of security interest stated in Article 9, § 9–203 and Article 1, § 1–201(37). Although § 101(51) states that there must be an agreement purporting to create a lien, it does not state that the lien must be enforceable. Therefore, the Court must look to the language in the agreement.

This conclusion is also supported by the conclusion of a majority of courts that

§ 1322(b)(2) was enacted to protect the lender whose only collateral is the traditional home mortgage. Given the amount of disagreement regarding the interpretation of the language in § 1322(b)(2), it is proper to consider its legislative history.[1] *Matz v. Household Int'l Tax Reduction Inv. Plan,* 227 F.3d 971, 974 (7th Cir.2000) (when statutory language is unclear, the court must search the legislative history for instruction). Indeed, Justice Stevens stated in *Nobelman* that "the legislative history [of § 1322(b)(2) ] indicat[es] that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." 508 U.S. at 332, 113 S.Ct. 2106 (Stevens, J., concurring).[2]

If the Debtors had not filed a Chapter 13 petition, but had still defaulted on the loan payments, the Bank could likely recover on its security interest in their residence from the foreclosure sale of the home only to the extent of the value of the collateral. Any deficiency would be an unsecured claim against the Debtors. The Bank should not obtain a more favorable equitable result in bankruptcy than it would be able to obtain outside of bankruptcy. *See In re Wheaton Oaks Office Partners Ltd. Partnership,* 27 F.3d 1234, 1241 (7th Cir.1994) (goal is to ensure that creditor is afforded in bankruptcy court the same protection he would have under state law if no bankruptcy had ensued) (citing *Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

## IV. CONCLUSION

For the foregoing reasons, the Bank's objection under § 1322(b)(2) to confirmation of the Debtors' Chapter 13 plan is overruled and its motion to modify the automatic stay is continued to the confirmation hearing, which shall be set forthwith.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bank-

---

1. There is a notable divergence of authority regarding § 1322(b)(2). Courts disagree as to whether the language in the statute is clear. *Contrast In re Hammond,* 27 F.3d 52, 57 (3rd Cir.1994) (language is unambiguous) *with Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 4 (1st Cir.1996) (plain meaning approach to § 1322(b)(2) is inconclusive). Courts also diverge on the issue of what language is sufficient to create an interest in additional collateral. *Contrast Hammond,* 27 F.3d at 57 (any language purporting to take additional security removes creditor from § 1322(b)(2)) *with In re Lee,* 215 B.R. 22, 26 (9th Cir. BAP 1997) (if language refers to items bound to the real property, is merely an enhancement or lacks independent value, then creditor is still protected).

2. *Accord Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277, 293 (5th Cir.2000) (a wholly undersecured second mortgage should not benefit from § 1322(b)(2) protection; protection of non-purchase money second home mortgages would be unlikely to positively impact home building and buying); *Lomas Mortgage,* 82 F.3d at 5–6 (permitting modification of creditor's rights to a multi-family property because the legislative history tends to show that Congress intended to benefit the residential mortgage market); *Hammond,* 27 F.3d at 57 (§ 1322(b)(2) reflects a congressional policy meant to protect home mortgage lenders, but the language of statute is clear that boilerplate language purporting to take a security interest in additional collateral will remove creditor from protection of § 1322(b)(2)); *In re Mann,* 249 B.R. 831, 839–40 (1st Cir. BAP 2000) (wholly unsecured second mortgages are not protected because to protect them would have minimal impact on home buying); *Marenaro,* 217 B.R. at 360–61 (if an abstract potential to use property for something other than a residence never amounted to a gleam in the eye of the owner at the time the mortgage was given, then the creditor is entitled to protection of § 1322(b)(2)); *Lee,* 215 B.R. at 25 (boilerplate language in a mortgage will not remove creditor from § 1322(b)(2) because strict interpretation of language would undermine availability of funds provided to mortgage borrowers); *Howard,* 220 B.R. at 718 (must look at the language of the agreement in determining whether § 1322(b)(2) applies in order to give affect to Congressional intent); and *In re Jackson,* 136 B.R. 797, 800 (Bankr.N.D.Ill.1992) (it is generally accepted that the underlying Congressional intent was to protect lenders engaged in home mortgage financing).

ruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.