**In re John James BOSCH and Karen Teresa Belobrajdic, Debtors.**

No. 00–48579–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

May 17, 2002.

Robert Breidenbach, Goldstein & Press-
man, P.C., St. Louis, MO, for debtors.

Sharon Burke, Becker, Dufour & Yarbrough, St. Louis, MO, for Eagle Bank.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Creditor Eagle Bank and Trust Company of Missouri objected to the confirmation of Debtors' First Amended Chapter 13 Plan. A hearing of the objection was held at which most of the issues were resolved. The sole issue of this memorandum is whether Eagle Bank's secured claim may be modified under 11 U.S.C. § 1322(b)(2). The Court has determined that the claim can be stripped down because at the time of the bankruptcy filing the claim was secured by collateral in addition to Debtors' principal residence.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(K) and (L), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

On August 29, 2000, Debtors John James Bosch and Karen Teresa Belobrajdic filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Debtors submitted their First Amended Plan on June 21, 2001. Trustee filed an objection to the plan on June 21, 2001. Trustee's objection has not been heard.

On June 26, 2001, Creditor Eagle Bank and Trust Company of Missouri filed an objection to Debtors' First Amended Plan. A hearing of Eagle Bank's objection was held on June 28, 2001. Most of the grounds of Eagle Bank's objection were resolved at the hearing. The Court took under submission the question of whether one of Eagle Bank's claims, which was allegedly secured solely by a lien on Debtors' principal residence, could be stripped down. The parties filed post hearing briefs regarding this issue and the case was fully submitted on November 14, 2001.

## FACTUAL FINDINGS

The Court finds the following facts from the court file, information provided at the hearing, and from the stipulated facts of the parties:

1. Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code on August 29, 2000.

2. Debtors formerly owned and operated Strategic Motivation Resources, Inc. ("SMR").

3. Debtors financed the operations of SMR, in part, through loans from Eagle Bank and Trust Company of Missouri.

4. Eagle Bank is a creditor of Debtors' estate. Eagle Bank filed three claims against the estate. Two of the claims are not in dispute. The parties disagree on the classification of Eagle Bank's third claim which is the subject of this proceeding.

5. Eagle Bank's third claim is in the amount of $81,140.12. The claim reflects the balance of a loan made by Eagle Bank to Debtors' business, SMR, in the amount $93,000.00 (loan number LDP 990 026 3003, also known as loan number 660073)(hereinafter "the Loan"). The Loan was made on February 11, 1997. The Loan was obtained and guaranteed under the auspices of the Small Business Administration (SBA).

6. The Loan was secured by a security interest in all of the assets of SMR, the personal guaranty of Debtors, and by the Debtors' residence located at 1555 Wooden Bridge Trail in Ballwin, Missouri.

7. Debtors' residence is encumbered by a first lien to Wells Fargo Mortgage. Eagle Bank's Loan is secured by a second deed of trust on the property. The parties agree for the purpose of this proceeding that the value of Debtors' residence is in excess of Well Fargo's lien.

8. Debtors filed their First Amended Plan on June 21, 2001. The Plan seeks to strip down Eagle Bank's claim concerning the Loan to the extent that it is unsecured.

9. SMR ceased operations and went out of business in 1999. Eagle Bank claims that it liquidated all of SMR's assets before Debtors filed their petition on August 29, 2000.

10. When Debtors filed their petition, an SMR bank account still had a balance of $694.01. Eagle Bank contends that this account was setoff (and therefore effectively depleted) when the bank placed a $9,000.00 hold against the account in June 1999.

## DISCUSSION

Debtors filed for bankruptcy relief under Chapter 13 on August 29, 2000. Eagle Bank filed a claim which concerned Loan number LDP 990 026 3003. The Loan was made to finance Debtors' now defunct business (SMR). It was originally secured by assets of Debtors' business as well as their personal guarantee and by a second deed of trust on their residence at 1555 Wooden Bridge Trail in Ballwin, Missouri. Eagle Bank contends that the only property available to satisfy its claim is the Debtors' principal residence. Eagle Bank as-

serts that the other assets which secured its claim were depleted at the time Debtors' petition was filed (it claims that SMR's assets had been completely liquidated and that an SMR bank account with $694.01 which existed at the time of filing had been subject to a setoff in 1999).

The parties have stipulated that the value of the residence is sufficient to pay off Wells Fargo Mortgage's first deed of trust. The parties apparently disagree whether the remaining value of the residence is sufficient to completely satisfy Eagle Bank's lien. To the extent it is not sufficient, Debtors seek to strip down any unsecured portion of Eagle Bank's claim and treat that portion as an unsecured claim in the plan. Consequently, in their First Amended Plan Debtors seek to modify Eagle Bank's claim under 11 U.S.C. § 1322(b)(2).[1] Eagle Bank objected to Debtors' attempt to modify its claim. It argued that the claim cannot be stripped down because the only collateral available to be levied upon to satisfy the claim at the petition date was Debtors' principal residence.

Section 1322(b)(2) of the Bankruptcy Code prevents the modification of a claim which is secured solely by a debtor's principal residence. The issue before the Court is whether a secured claim, which was initially secured by assets in addition to the principal residence may be modified when those additional assets were unavailable or worthless at the time the debtor filed for bankruptcy relief. Section 1322(b)(2) does not address how such a secured claim should be treated. None of the courts in the Eighth Circuit has addressed this issue.

---

**1.** Section 1322(b)(2) allows a plan to modify the rights of holders of secured claims (strip down a claim) unless a claim is secured solely by a security interest in real property that is a debtor's principal residence.

Eagle Bank asserts that the availability of additional collateral at the time that a petition is filed is the key to the application of section 1322(b)(2). Eagle Bank argues that regardless of what collateral secured a claim before the petition date, if the only collateral that is available to be levied upon at the petition date is the debtor's principal residence, then that claim is not modifiable under section 1322(b)(2).

Debtors do not agree with Eagle Bank's assertion. Instead, they argue that the availability of additional collateral which may be levied upon to satisfy a claim on the petition date is not determinative of whether section 1322(b)(2) should apply. Debtors assert that courts should look to the original loan agreement to determine if section 1322(b)(2) applies. If the secured claim was originally secured by assets in addition to the debtor's principal residence, then the anti-modification provision of section 1322(b)(2) should not apply regardless of the value or availability of additional collateral on the petition date.

In the alternative, Debtors argue that courts should look at the terms of the loan agreement as it existed at the time the petition was filed. Collateral securing a loan may have been added or released since the loan agreement was originally entered into by the parties. If a loan agreement, at the time the petition is filed, contains a security interest in property other than a principal residence, the anti-modification provision of section 1322(b)(2) should not apply regardless of the ability to levy on the additional collateral.

In sum, Debtors assert that if a loan agreement, either originally or at the time of the petition, is secured by assets in addition to a debtor's principal residence, then the anti-modification provision of section 1322(b)(2) does not apply to a claim concerning that loan.

██ The majority of courts which have addressed the "additional collateral" issue as it applies to section 1322(b)(2) have adopted one of Debtors' alternative positions. Illustrative of these decisions is the case of *In re Howard*, 220 B.R. 716 (Bankr.S.D.Ga.1998). In *Howard*, the court held that the critical date for determining whether a creditor qualifies for section 1322(b)(2) protection is the date that the petition is filed. *Id.* at 718. To determine whether a claim is secured solely by a debtor's principal residence or by additional collateral, the court should resort to the language of the loan agreement as it exists at the time of the filing of the petition. *Id.* The focus of a section 1322(b)(2) inquiry is on the language of the agreement *"regardless of the existence or value of the collateral which is available to secure creditor's claims as of the time of filing the petition."* *Id.* (emphasis added). The reason a court looks to the language of the agreement and not to the value of the additional collateral is supported by the language and purpose of section 1322(b)(2). *Id.*

██ The *Howard* court supported its conclusion with the following discussion:

Section 1322(b)(2) states that claims "secured only by a *security interest* in real property that is the debtor's principal residence" are protected from modification. 11 U.S.C. § 1322(b)(2) (emphasis added). The Bankruptcy Code defines "security interest" as a "lien created by agreement." Thus, the key item of evidence to be examined in making the determination is the agreement itself.

This conclusion is further supported by the purpose and policy of section 1322(b)(2). The section was enacted to protect the traditional home mortgage lender. [*In re*] *Dinsmore*, 141 B.R. [499

(Bankr.W.D.Mich.1992)] at 506. One court explained this purpose as follows:

> "Although the legislative history is silent, the plain intent of the exception is to provide stability in the residential long-term home financing industry and market.[2] It is to specifically protect institutional lenders engaged only in providing long-term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts."

*United Companies Fin. Corp. v. Brantley*, 6 B.R. 178, 189 (Bankr.N.D.Fla. 1980).

Thus, where loan documents grant a creditor security interests in principal residence real estate and other collateral, such creditor does not qualify for the protection of section 1322(b)(2), even where the only collateral which is still available to be levied upon at the petition date is the principal residence real estate. Creditors who take security interests in other collateral in addition to the principal residence real estate are usually attempting to secure debt transactions that are unlike the traditional home finance transactions which the statute is intended to protect. If, however, an agreement, like the one in this case, is modified to reflect the change in collateral, it could be assumed that the parties would have contracted for such a modification with a view toward the protection that section 1322(b)(2) provides.[2]

2. The agreement at the time of the filing of the petition may not be the same as the one entered into at the time of the inception of the relationship between the debtor and the creditor. For example, the agreement may have been modified to include or exclude collateral along the way. Such a modification may give rise to the protection afforded by § 1322(b)(2) when such protection had not been available at the outset of the relationship. Such a modification must, however, be the result of a mutual agreement which satisfies all the criteria of a valid contract.

Finally, in order to understand section 1322(b)(2), it is important to examine the nature of its protection. This provision protects a creditor from modification under the debtor's plan. It is unfair for a creditor, at the same time, to seek what amounts to a modification of the agreement in the form of requesting that the Court disregard a provision that provides for collateral in addition to the debtor's principal residence real estate. Thus, unless the agreement has been modified by agreement of the parties to provide that the sole collateral is the debtor's principal residence real estate, the fact that additional collateral is no longer available or has no value is not sufficient to bring that creditor's claim within the protection of section 1322(b)(2).

*Id.* at 718–719.

■■■ The Court adopts the well reasoned decision of the *Howard* court. The critical date to determine whether a secured claim is exempt from modification under section 1322(b)(2) is the petition filing date. The *Howard* court's conclusion that a court should look to the loan agreement, which is the basis of a secured claim, to determine whether the claim is secured solely by the debtor's principal residence is directly supported by the United States

2. *See Nobelman v. American Savings Bank,* 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (J. Stevens, concurring) Congress' predominate reasoning behind the favorable treatment of residential mortgages through the anti-modification provision of section 1322(b)(2) was to encourage the flow of capital into the home lending market.

Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman*, the Court stated that the bank's "rights," which are protected by Section 1322(b)(2), are "reflected in the relevant mortgage instruments." *Id.* at 329, 113 S.Ct. 2106. If a claim is secured in the loan documents solely by a debtor's principal residence, then the claim cannot be modified under section 1322(b)(2). If the loan documents grant a security interest in additional collateral, then the claim can be modified regardless of the value or availability of that collateral to satisfy the claim. *See In re Libby*, 200 B.R. 562 (Bankr.D.N.J.1996)(a security interest granted in additional collateral in loan documents was sufficient to prevent creditor form invoking protection under section 1322(b)(2) even where the additional collateral never existed in fact).

The courts which have adopted the view of looking to the loan documents to determine whether a secured claim can be modified have differed in one aspect. Some have held that courts should look at the terms of the loan agreement on the date it was originally entered into by the parties. *See In re Smart*, 214 B.R. 63 (Bankr. D.Conn.1997)(a court should examine the original loan documents to determine whether debtor's real property is his "principal residence" which would allow a modification of a creditor's claim under 11 U.S.C. § 1322(b)(2)). Other courts have recognized that the parties may have mutually agreed to change the agreement from its initial terms. Those courts look to the terms of the loan agreement as it existed at the time that a debtor filed his petition. *See In re Howard*, 220 B.R. at 718.

Although the Court is persuaded by the approach taken in *Howard*, it need not decide which is the better approach in order to reach a decision in the present case. Eagle Bank's original loan documents with Debtors grants the Bank a security interest in collateral in addition to their principal residence. There is no evidence before the Court that the parties ever mutually modified these documents. Therefore, whether the Court would make its decision based on the original loan documents or the documents as they existed at the time the petition was filed results in the same analysis in this case because the original documents were unchanged. Consequently, the Court finds that Eagle Bank's claim may be modified under section 1322(b)(2) because the loan documents which form the basis of that claim reflect that the loan was secured by collateral in addition to Debtors' principal residence. The fact that the additional collateral may now be worthless or unavailable to levy upon is of no consequence.

Accordingly, the Court will deny Eagle Bank and Trust's objection to Debtors' First Amended Plan concerning the Bank's secured claim.

An Order consistent with this Memorandum Opinion will be entered this date.